## In re Reclassification of Ranch Brook

[508 A.2d 703]

No. 84-422

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed February 28, 1986

*Robert J. Kurrle*, Montpelier, and *Thomas J. Amidon*, Stowe, for Appellant Mt. Mansfield Co.

*Stevens Law Office*, Stowe, for Appellees Heyer and Ranch Brook Preservation Legal Defense Fund, Inc.

*John J. Easton, Jr.*, Attorney General, and *Merideth Wright*, Assistant Attorney General, Montpelier, for Appellee Agency of Environmental Conservation.

**Gibson, J.** This is an appeal from a review by the Lamoille Superior Court, pursuant to 10 V.S.A. § 1270, of a reclassification decision by the Water Resources Board (Board). The superior court reversed the Board's decision to downgrade the classification for Ranch Brook from class "B" to class "C." Appellant, Mt. Mansfield Company, argues for reversal of the superior court decision. We affirm the decision of the court to remand the matter for further proceedings before the Board.

Appellant operates a ski area on Mt. Mansfield in Stowe, Vermont, and has developed plans to build six hundred condominium units and other associated facilities over a ten-year period. The plan includes the construction of a wastewater treatment facility with a proposed discharge of 292,000 gallons of treated wastewater per day into Ranch Brook and its unnamed tributary.

Ranch Brook is an upland brook which borders appellant's property. The brook had been designated a class "B" waterway in accordance with 10 V.S.A. § 1253(b). According to Rule 11 of the Vermont Water Quality Standards, class "B" waters may not receive any discharge of wastewater.

The Board on its own motion gave notice of its intent to consider the reclassification of a section of Ranch Brook to class "C," and subsequently conducted two public hearings. 10 V.S.A. § 1253(c). Appellees Laurence and Harriet Heyer and representatives of the Ranch Brook Preservation Legal Defense Fund attended both hearings, as did representatives of the Mt. Mansfield

Company and the Department of Water Resources (Department). The Heyers own an inn 1500 feet downstream from the proposed discharge site.

Appellees opposed the lowering of the classification of Ranch Brook because of potential adverse effects on the water quality of the brook. Appellant contended that, because of the efficiency of the proposed treatment system, the water quality of Ranch Brook would not be substantially degraded. After the hearings, the Board concluded that a reclassification of Ranch Brook to class "C" would be in the public interest.

The superior court, upon review of the reclassification order, determined that the Board acted arbitrarily, unreasonably, and contrary to law in reaching its conclusion. 10 V.S.A. § 1270. The court found that the Board applied the wrong standard in making its reclassification decision and deprived appellees, as interested parties, of their statutory right to be heard at the Board hearings. See 10 V.S.A. § 1253(c). Appellant claims that the findings made by the superior court are not supported by the evidence.

On appeal, the superior court's findings will not be set aside unless shown to be clearly erroneous. *Cliche* v. *Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983). When the evidence is conflicting, this Court will reverse on the basis of erroneous findings of fact only if there is no reasonable basis upon which the findings can stand. *Id.* Upon review of the record, it is clear that the findings of the superior court are supported by the evidence.

## I.

Appellant first challenges the superior court's finding that the Board failed to apply the appropriate standard for reclassification. The statutory standard is as follows:

> The board may on its own motion, and it shall upon petition by a state agency, a municipality or by thirty or more persons in interest alleging that it or they suffer injustice or inequity as a result of the classification of any waters, hold a public hearing convenient to the waters and area concerned and shall give all interested parties an opportunity to appear and be heard. If upon consideration of all the evidence submitted, the board finds that the *established classification is contrary to the public interest* it may by rule reclassify all or any portion to a higher or lower classification. If, pursu-

ant to the above procedure, the board finds that it is in the public interest to change the classification of any pond, lake or reservoir designated as Class A waters by subsection (a) of this section, it shall so advise and consult with the department of health and shall provide in its reclassification rule a reasonable period of time before the rule becomes effective.

10 V.S.A. § 1253(c) (emphasis added).

In its order, the Board stated that:

the reclassification of a limited segment of Ranch Brook from Class 'B' to Class 'C' is *in the public interest*. This determination is based on the evidence presented in this proceeding by the Mt. Mansfield Company regarding the nature and reliably [sic] of its proposed method of wastewater treatment and disposal and the characteristics of the effluent which will reach Ranch Brook following subsurface disposal. (Emphasis added.)

According to the superior court, the Board not only failed to apply the proper standard for reclassification, it also failed to make findings allowing for the application of the appropriate standard. We agree.

■ One of the paramount functions of this Court when construing a statute is to ascertain and give effect to the legislative intent. *Paquette* v. *Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985).

If the meaning of a statute is plain on its face, it must be enforced according to its terms and there is no need for construction . . . ; however, if doubts exist or if the statute is ambiguous, the legislative intent "should be gathered from 'a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the reason and spirit of the law.'"

*Id.* (citations omitted). Further, "statutes relating to the same subject matter should be read in pari materia." *In re A. C.*, 144 Vt. 37, 42, 470 A.2d 1191, 1194 (1984).

Appellant concedes that the standard set out in 10 V.S.A. § 1253(c) plainly states that the Board is to determine whether the *existing* classification is *contrary* to the public interest. Neverthe-

less, appellant argues that this standard is the logical converse of the standard employed by the Board, namely, whether *reclassification* is *in* the public interest. We disagree.

A review of the statutory system relating to conservation and development in Vermont evidences legislative efforts to combat pollution and maintain the quality of Vermont waters. These concerns have been clearly stated:

> It is the purpose of this act to amend the Vermont statutes annotated pertaining to water resources by further classifying the waters of Vermont to protect, maintain and improve the quality and quantity of the waters of Vermont for water supplies, the propagation of wildlife, fish and aquatic life, aesthetic value and for domestic, agricultural, industrial, commercial, recreational and other legitimate uses; to provide that no waste be discharged into the waters of the state without first being treated to such degree as to protect all legitimate beneficial values and uses of such waters; to provide for the prevention, abatement and control of new or existing practices harmful to water quality . . . .

10 V.S.A. § 1251, note. See also *In re Reclassification of Airport & Pond Brooks*, 142 Vt. 458, 459, 457 A.2d 635, 636 (1983) ("lowering an established classification [is] an action running contra to the general statutory direction"); 10 V.S.A. § 701 ("the lands, water, forests and wildlife of the state of Vermont are among the basic assets of the state, and . . . the preservation of these lands, water, forests and wildlife by conservation, development and use is necessary to protect and promote the health, safety, and general welfare of its people"); 10 V.S.A. § 901 ("It is . . . the policy of the state that the water resources of the state shall be protected, regulated and, where necessary, controlled under authority of the state in the public interest and to promote the general welfare.").

With these statutory objectives in mind, we turn to the specific provision here at issue. The statute clearly provides that waters may be reclassified to a higher or lower classification. The statutory language, however, establishes a clear preference for the existing classification and places the burden of proof on the party desiring reclassification to affirmatively show that the current classification is against the public interest.

The record reveals that the Board focused on the efficiency of the proposed treatment plan and the possible effects of the resulting wastewater discharge on the purity of Ranch Brook. While these may be relevant considerations when examining the issue of what is an appropriate classification, the statute requires a more far-reaching investigation into the overall effect of the existing classification when considering whether a reclassification is warranted. For example, the Board found that "[t]he development plans . . . have been reviewed and found to be in compliance with the municipal plan by the appropriate officials of the Town of . Stowe." See 10 V.S.A. § 1253(e) (municipal, regional, and state plans are among the many factors to be considered by the Board when examining the question of public interest). There is no finding, however, that the existing classification is against the public interest under the municipal plan. The Board's focus was thus misdirected.

We therefore hold that the findings of the superior court on the matter of statutory standards used by the Board for reclassification are not clearly erroneous. The superior court had a reasonable basis for its findings, which in turn support its conclusion that the Board applied the wrong standard in reclassifying Ranch Brook.

## II.

Appellant's second claim on appeal is that the superior court erred in finding that the Board failed to meet its statutory obligation in conducting the reclassification hearings. We address this issue because it may arise again in further hearings before the Board.

The statute controlling reclassification hearings requires that all interested parties be given the opportunity to appear and be heard. 10 V.S.A. § 1253(c). In its order, the Board designated appellees Laurence and Harriet Heyer as parties in interest. The superior court found that despite this designation, the Board effectively created two classes of interested parties, thereby denying appellees the same opportunity to present their case that it afforded the Mt. Mansfield Company and the Department. The superior court determined that the Board unjustly treated appellees as mere participants rather than real parties in interest, and subsequently limited their participation. The record indicates that

the Chair of the Board instructed Mr. Heyer and others, unlike the appellant and the Department, to limit their opening statements to one sentence each. Although the Board did not strictly enforce the one-sentence limit, the record shows that Mr. Heyer did not have adequate opportunity to express his views during the hearings.* We recognize the need for order in a proceeding such as this, but it is important that interested parties be afforded adequate opportunity to participate in the proceedings. We conclude that the superior court's concern in this regard was well-founded.

*Affirmed.*

---

* A review of the record reveals that in response to a question posed by Mr. Heyer regarding what would be done if Ranch Brook did not exist, the Chair called Mr. Heyer out of order, ruling this to be an unacceptable hypothetical question. Mr. Heyer then asked whether a question about possible alternatives would be "legitimate." In response, the Chair stated: "Well, I think the question of alternatives will be examined as we go along, but hypothetical questions are dangerous and I'm going to rule that out of order." The record reflects a recurring reluctance by the Board to consider questions and concerns as they were raised by Mr. Heyer and others.