# Petition of New England Telephone and Telegraph Co. and Department of Public Service to Extend Telecommunications Agreement

[621 A.2d 232]

No. 92-005

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed January 8, 1993

*Kathleen Davis* of *Downs Rachlin & Martin*, Burlington, for Appellant.

*Joseph E. Frank* of *Paul Frank & Collins*, Burlington, and *Bartlett L. Thomas*, Boston, Massachusetts, for appellee New England Tel. & Tel. Co.

*Heather R. Wishik*, Special Counsel, and *James Volz*, Director for Public Advocacy, Montpelier, for appellee Department of Public Service.

**Allen, C.J.** RCI Long Distance New England, Inc. d/b/a Long Distance North (LDN) appeals from a Public Service Board order approving an Extended Vermont Telecommunications Agreement (EVTA). LDN argues that the Board did not meet the statutory requirements of 30 V.S.A. § 226a(c) and that the Board treated the EVTA as an extension when it was actually a modification. We affirm.

New England Telephone and Telegraph Company (NET) and the Vermont Department of Public Service (DPS) jointly petitioned the Board for contract-based rate regulation under 30 V.S.A. § 226a. Section 226a authorizes contract regulation, in lieu of traditional rate regulation, of any company that provides basic exchange telecommunications service. Contract regulation is established through a Board-approved agreement between a company and the DPS. The Board rejected petitioners' Vermont Telecommunications Agreement (VTA), but suggested that a modified contract would be acceptable if it adequately

addressed certain enumerated deficiencies in the VTA. On December 12, 1988, the Board approved petitioners' modified contract (MVTA).

This appeal arises from the approval by the Board on December 4, 1991 of a one-year extension of the MVTA. LDN, a competitor of NET, argues that the Board's findings do not support the conclusion that the extended contract (EVTA) satisfied the 30 V.S.A. § 226a(c) statutory criteria, and therefore, the EVTA should not have been approved. LDN also argues that the extended contract (EVTA) was actually a modification of the MVTA and that the Board failed to follow the MVTA's procedure on modifications, which would have required an external change in circumstances before the contract could have been modified. Because such an external change in circumstances did not exist, LDN argues that the MVTA could not have been modified.

## I..

■ LDN argues that the Board's findings do not support its conclusion that the contract satisfies the criteria of 30 V.S.A. § 226a(c). Specifically, LDN argues that the Board failed to make findings on the criteria set forth in the statute.* Under the statute, as it existed at the time of approval of the MVTA, the Board may grant approval of a contract

> only if it finds that a contract in its entirety is just and reasonable giving due consideration to the services and price levels covered and any risk of cross-subsidization, promotes the general good of the state, supports reasonable competition, and takes into consideration any state telecommunications plan or policy adopted pursuant to section 202d.

30 V.S.A. § 226a(c) (prior to 1991 amendment).

■ Where the findings of an administrative agency "fairly and reasonably" support the agency's conclusions of law, this

---

* Because we agree with the Board's conclusion that the EVTA is an extension of the MVTA and not a new contract we do not address LDN's argument that the 1991 amendment to § 226a(c) concerning customer privacy interests should have been applied in the Board's approval of a new contract.

Court will uphold the agency's decision. *Caledonian Record Publishing Co. v. Department of Employment & Training*, 151 Vt. 256, 260, 559 A.2d 678, 681 (1989). Moreover, decisions made within an agency's area of expertise "are presumed correct, valid and reasonable," absent a clear showing to the contrary. *Id.* Throughout the Board's order, reference is made to its July 12, 1988 order, which rejected the VTA, and the subsequent MVTA, which was approved in the Board's December 30, 1988 order. Where identical factual considerations governed the application of § 226a(c), the Board's reliance on portions of the earlier orders was appropriate and removed the necessity of readdressing identical issues.

Under the first statutory criterion, the Board considered the services and the price levels and any risk of cross-subsidization. The Board found that the specified service quality levels in the EVTA were identical to those set forth in the MVTA. This finding supports the Board's conclusion that the EVTA will maintain the service quality of the MVTA. The Board also found that the proposed rate increase would be "less than the basic exchange rates established in 1985, adjusted for inflation through 1991." This finding supports the Board's conclusion that the price levels were reasonable because they were lower than they would otherwise have been.

LDN's argument under this first criterion focuses on the Board's alleged lack of findings on the cross-subsidization risk under the EVTA. NET's potential for cross-subsidization arises from the fact that NET provides monopolized services (local service) and competitive services (intrastate services). As the Board explained in its July 12, 1988 order, the risk of cross-subsidization will be adequately controlled where NET has no pool of local service revenues available to offset losses due to anticompetitive pricing in other services. Although the Board's finding was interspersed in the discussion section of the order, the Board stated:

> [W]e explicitly recognize that the revenue increase will not fully compensate the Company for the costs it incurs to meet its obligations and that NET still faces a considerable financial incentive to improve the efficiency of its own operations. Furthermore, the rate level approved here also ensures that NET will not have available a pool of monopoly

profits to cross-subsidize anti-competitive offerings in more highly contested markets. These features are critical components of the current VTA, and they are preserved by the extension.

The Vermont Administrative Procedure Act requires that findings of fact and conclusions of law be separately stated. 3 V.S.A. § 812(a). Where findings of fact, however, are "interspersed throughout [the Board's] discussion" such that there is "no doubt as to what [the Board] decided and how its decision was reached," the Board's order will stand. *In re Village of Hardwick Electric Department*, 143 Vt. 437, 444–45, 466 A.2d 1180, 1184 (1983). The finding at issue here adequately addresses the complicated issue of cross-subsidization; moreover, other factual findings regarding NET's revenues, earnings and expected rates of return supplement the finding. In addition, the Board explicitly referred to the July 12, 1988 order's discussion of cross-subsidization, which leaves no doubt as to the Board's reasoning.

LDN argues that the Board failed to make findings on the second statutory criterion: that the EVTA promote the general good. The Board stated, "We find . . . that the proposed $5.5 million increase is consistent with the general good of the state." Specifically, the Board found that the rate increase would result in rates that were lower than they would have been under traditional rate regulation and as compared to the 1985 rates adjusted for inflation. Although the Board used the word "consistent" instead of "promotes," this choice of word is not grounds for reversal. LDN's argument to the contrary is based on a case that is not on point. In *In re Ranch Brook*, the statute required a finding that "the established classification is contrary to the public interest." 146 Vt. 602, 604, 508 A.2d 703, 704 (1986) (quoting 10 V.S.A. § 1253(c)). In that case, the Water Resources Board found only that reclassification was in the public interest and neglected to make a finding regarding the established classification. *Id.* at 605, 508 A.2d at 704. Thus, the Water Resources Board did not make findings allowing for the application of the statutory standard. In the present case, the Public Service Board made the necessary findings to support its conclusion under the statute but used language different from the statute in its conclusion. As the rate increase was the only sub-

stantive change in the EVTA, the Board's finding, and its subsequent approval of the petition, supports the Board's conclusion that the EVTA will promote the general good.

■ LDN also argues that the Board neglected to make any findings on the third statutory criterion: that the EVTA support reasonable competition. As the Board stated in its July 12, 1988 order, this criterion is closely tied to the analysis of the risk of cross-subsidization. As stated above, the Board made adequate findings that there was no risk of cross-subsidization. Moreover, the Board also found that the EVTA preserved nondiscriminatory access tariffs and a 33.33% minimum differential between aggregate toll charges and its aggregate access charges that were present in the MVTA, thereby insuring access for competitors. Although the Board did not address the issues of market flexibility regarding new services, notice to consumers and anti-bundling provisions, these issues were discussed in the July 12, 1988 order and the MVTA was approved only when protections against these potential problems were added. These protections were preserved in the EVTA. Although the Board did not explicitly state that the EVTA supports reasonable competition, the Board's conclusion to that effect is apparent when the Board's order is read in conjunction with the VTA and MVTA orders.

LDN argues that the Board erred when it decided not to address the fourth statutory criterion because there was no state telecommunications plan at the time of the hearing. Section 226a(c) requires that the contract "take[] into consideration any state telecommunications plan or policy adopted pursuant to section 202d." The Board made the finding that no such plan had been adopted. LDN contends that this finding supports a holding that the Board failed to meet the requirements of § 226a(c) because § 202d makes the creation of such a plan mandatory by January 1, 1989, nearly three years prior to the Board's order.

Section 226a(c) requires consideration of only "any" telecommunications plan that has been "adopted" by the Department. The plain meaning of this language is clear, and the statute will be enforced according to its express terms. *Cavanaugh v. Abbott Laboratories*, 145 Vt. 516, 529, 496 A.2d 154, 162 (1985). Although § 202d makes adoption of the telecommunications

plan mandatory, § 226a(c) itself does not suspend the Board's powers under § 226a in the absence of a telecommunications plan.

■ LDN compares § 226a(c) to 30 V.S.A. § 248(b)(7), which requires that a new gas and electric facility be "in compliance with the electric energy plan approved by the department under section 202 of this title, or that there exists good cause to permit the proposed action." LDN argues that the Legislature, by providing an alternative in § 248 and not in § 226a(c), intended to make a consideration of the telecommunications plan mandatory under § 226a(c). Although § 248 allows the Board an alternative method of approving a new facility absent compliance with the electric energy plan, neither statute specifically provides for the case where no plan has been adopted or approved. Therefore, the language of § 248 does not assist the Court in construing the meaning of § 226a(c). The Board's finding that no telecommunications plan was in existence at the time of approval of the EVTA supports its conclusion that the contract met the criteria of § 226a(c).

In conclusion, the Board's findings, although interspersed throughout the discussion section, support its conclusion that the EVTA satisfies the § 226a(c) criteria.

## II.

LDN's second major argument is that the EVTA was not an extension of the MVTA because the EVTA set forth new terms, including higher basic exchange rates and increased rates for special types of lines, such as Centrex service rates. Instead, LDN contends that the EVTA was actually a modification of the MVTA, and Section XXX of the MVTA (modifications) should have governed the approval of the EVTA. Because Section XXX has different procedural requirements than Section XXIX, LDN argues that the EVTA could not have been approved under Section XXX.

First, Section XXX requires an external change in circumstances, including "certain decisions of the FCC or other administrative, judicial or legislative body, or changes in technology or market conditions." Second, Section XXX requires the Board to find that "such [rate] changes are required

or desirable to bring the rates . . . into conformity" with such changes in circumstances, and that the contract meets the § 226a(c) standards. According to LDN, the prerequisite changes in circumstances never occurred; therefore, the Board could not have found that the rate increase was required or desired to bring the rates into conformity with the new circumstances.

LDN's contractual argument rests on its definition of a term in the MVTA. The question of whether a contract term is ambiguous is a matter of law for the court to decide. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). Where the language of a contract is clear and unambiguous, the plain meaning of the language applies. *Id.* at 579, 556 A.2d at 85. Section XXIX (extensions) states that "the terms of this agreement may be extended . . . on terms to be negotiated by the COMPANY and the DEPARTMENT and upon approval, after hearing, by the Board." [PC 143]. This language is clear and unambiguous. NET and DPS agreed to the terms of the EVTA, which included a negotiated rate increase, in order to extend the MVTA for one additional year. Thus, the EVTA is an extension of the MVTA. The Board approved the EVTA and found that it met the requirements of § 226a(c); therefore, the requirements of Section XXIX for extensions of the contract were followed.

LDN also contends that even if the EVTA is deemed to be an extension, § 226a(b) precludes the Board from approving an extension which includes a rate change. Section 226a(b) states that the contract "shall provide for specified basic exchange rates during the life of the contract." The rates under the MVTA were specified and fixed for the three-year life of the contract, and the new rates under the EVTA were also specified and fixed for its one-year life. Thus, there could be no change in rates during the life of either the MVTA or the EVTA, and the extension meets the statutory requirements.

Appellant raises other arguments, which we find meritless. Appellant argues that the Board conducted an illegal, abbreviated rate regulation case. The Board was required to use rate-making criteria to determine the reasonableness of the rate increase, but this did not convert the proceeding into a rate regu-

lation case. Rather, the Board followed the requirements of 30 V.S.A. § 226a in reviewing the contract. In addition, LDN contends that the Board improperly shifted the burden of proof and rested its decision on LDN's failure to submit evidence demonstrating that the extension of the MVTA would not be just and reasonable. We disagree and hold that the Board made sufficient affirmative findings based on NET and DPS's evidence as required under § 226a(c).

*Affirmed.*