## Russell Tilley and Helen Tilley v. Green Mountain Power Corporation

[587 A.2d 412]

No. 90-044

Present: Allen, C.J., Gibson and Morse, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed February 8, 1991

*Suzanne R. Brown of Perry & Schmucker,* South Burlington, for Plaintiffs-Appellees.

*David T. Austin* of *Sheehey Brue Gray & Furlong,* Burlington, for Defendant-Appellant.

**Morse, J.** Plaintiffs, South Burlington property owners, sued defendant Green Mountain Power Corporation (GMP) to prevent GMP from running additional power lines along an existing easement across their property. The trial court granted plaintiffs a permanent injunction preventing construction. The court found that when the easement was initially created in 1961, a GMP representative, in conversation with Helen Tilley and Russell Tilley's father, Rollin, had assured them that "the power line would not be enlarged in scope." Relying on *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 84 (1988), the court reasoned that GMP's verbal assurance was a circumstance surrounding the creation of the 1961 easement deed, which rendered that deed ambiguous. The court concluded that the only fair and reasonable interpretation of the deed, given the verbal assurance, was that no significant expansion of the power lines was intended, and gave relief to plaintiffs. We hold that the court misconstrued *Isbrandtsen* and violated the parol evidence rule. Accordingly, we reverse.

The 1961 deed granted GMP

> the perpetual right and easement to construct, reconstruct, repair, maintain, operate and patrol, for the transmission of high and low voltage electric current and for a line of poles, which may be erected at different times, with wires and cables strung upon and from the same, and all necessary foundations, anchors, guys, braces, fittings, equipment and appurtenances, over, across and upon our land . . . .
>
> Also the perpetual right and easement from time to time without further payment therefor . . . to renew, replace, add to and otherwise change the line and each and every part thereof . . . .

After this deed was executed, GMP constructed a line of poles supporting a crossarm with four electrical cables. The trial court heard testimony from Russell Tilley that, prior to signing the easement, Helen and Rollin were shown a survey and plan

by GMP and were assured that "there wouldn't be any changes in it." In 1977, Rollin and Helen entered into a second easement deed with GMP for the sole purpose of relocating a portion of the preexisting easement. The court found, and we agree, that the 1977 easement did not alter the intent of the 1961 deed as to GMP's right to enlarge the scope of the power line.

The event giving rise to this lawsuit was GMP's attempt to add three cables to the existing line of poles for transmission of low-voltage electrical current to customers in the Dorset Street area. To accomplish this plan, GMP proposed adding a second crossarm to each pole and raising the height of the poles by ten feet. The trial court found that this project would adversely affect plaintiffs' view from their property of Mount Mansfield and other mountains and that GMP could build the project underground for an added cost of over $190,000 but declined to do so without a subsidy in that amount.

The language of the 1961 easement deed is unambiguous on its face. The trial court, however, considered parol evidence that the deed does not mean what it says and concluded an ambiguity exists. In *Isbrandtsen*, we stated:

> [W]e believe it appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement. Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable.

150 Vt. at 579, 556 A.2d at 84. In a footnote, however, we cautioned that the parol evidence rule is still good law; an oral agreement may not replace or modify a contemporaneous or subsequent written agreement. *Id.* at 579 n.*, 556 A.2d at 84 n.*.

The court here indirectly substituted the verbal understanding for the written language, by holding that the verbal assurance was a surrounding circumstance that caused the deed to become ambiguous and then resolving the ambiguity in plaintiffs' favor. This reasoning fails because the verbal assurance was not simply a context giving meaning to the written agreement; rather, the verbal assurance was an oral, contractual term directly contradicting the later written expression of

agreement. The rule permitting contracts to be read in light of surrounding circumstances should not be allowed, as it did here, to swallow up the parol evidence rule.

*Reversed.*