**JUDGE DEVELOPMENT CORP., Plaintiff,**

v.

**The BANK OF NEW YORK, Defendant.**

**No. 2:92–CV–243.**

United States District Court,
D. Vermont.

Feb. 9, 1993.

---

Christopher D. Roy, Downs Rachlin & Martin, P.C., Burlington, VT, for plaintiff.

Richard A. Lang, Jr., Wilson, Powell, Lang & Faris, Burlington, VT, for defendant.

OPINION AND ORDER

PARKER, Chief Judge.

Judge Development Corp. ("JDC") filed a three count complaint seeking injunctive relief and damages against Bank of New York ("Bank"). JDC's claim arose from the Bank's refusal to discharge a mortgage it held on property owned by JDC. In Count I of the complaint, JDC seeks a permanent

injunction to compel the Bank to release the mortgage. In Counts II and III it alleges that the Bank's action in refusing to release the mortgage constitutes a bad faith breach of contract and a violation of 27 V.S.A. § 464 and accordingly seeks to recover damages.

In a previous Findings of Fact and Opinion, this Court granted a request by JDC for a mandatory preliminary injunction requiring the bank to release the mortgage in question upon payment of $200,000, the amount secured by the mortgage. (*Judge Development Corp. v. Bank of New York*, Civ. No. 92–243 (D.Vt. August 27, 1992) (Papers 18, 19).

JDC now moves for partial summary judgment on Counts I and III of its complaint. The Bank opposes the motion on several grounds claiming that: (1) there are outstanding issues of material fact to be resolved; (2) further discovery is necessary and will establish that JDC is in violation of a variety of covenants secured by the mortgage, rendering payment of the underlying debt insufficient to discharge the mortgage.; and (3) plaintiff has not met its burden in equity. The Bank also seeks to revisit an earlier interpretation of the mortgage rendered by this Court in its Findings of Fact and Opinion. (*Judge Development Corp. v. Bank of New York*, Civ. No. 92–243 (D.Vt. August 27, 1992) (Papers 18, 19). Finally, as to Count III, the Bank claims that material issues of fact remain. The Bank claims 27 V.S.A. § 464 was not violated because there was an honest dispute concerning the propriety of a discharge of the mortgage between the parties.

I.  *Background*

   a.  The 100 Dorset Mortgage

The background of this dispute is set out in this Court's earlier Findings of Fact and Opinion (Paper 18) and familiarity with them is assumed. A brief recitation of the relevant facts will serve for the purposes of this opinion.

In 1989 a predecessor to JDC obtained a $3.8 million loan from a predecessor of the Bank in the form of a $3.2 million Term Promissory Note (the "Term Note") and a $600,000 Line of Credit Promissory Note (the "Credit Line"). The Term Note and the Credit Line were secured by a first mortgage on JDC's property at Tafts Corners Shopping Center in Williston, Vt ("Tafts Corners") and a second mortgage on the property owned by JDC at 100 Dorset St.

On December 12, 1990 the loan documents were amended to reflect a restructuring of the 1989 loan. Vermont National Bank ("VNB") provided JDC with financing sufficient to retire the first and second mortgages on 100 Dorset then held by the Bank. From the proceeds of the VNB loan, JDC paid back $400,000 of the principal under the Credit Line and in turn the Bank marked that note "Paid in Full" and released the 1989 second mortgage on 100 Dorset. Under the terms of the restructuring the principal under the Term Note was increased to $3.4 million, an increase of $200,000 which accounted for the balance remaining of the principal under the Credit Line. The VNB loan was now secured by a first mortgage on the 100 Dorset property and a new second mortgage was executed between JDC and the Bank.

In the early part of 1992 JDC obtained a commitment from VNB for a loan of $2,952,-000, conditioned on JDC obtaining a release of the 1990 second mortgage on 100 Dorset held by the Bank. In July of 1992 JDC offered to pay the Bank $200,000 in return for a discharge of the second mortgage, using a portion of the VNB loan to do so. The Bank refused, arguing that the second mortgage provided security for the entire Term Note ($3.4 million) and would not be released until the entire debt was repaid. In the alternative, the Bank argued that the "Prepayment" provision of the Term Note[1] pro-

---

1.  The "Prepayment" provision of the Term Note is as follows:

   "(c) *Prepayment*. The principal balance may be prepaid in whole or in part, at any time without premium or penalty. In the event Lender receives partial prepayments, or in the event Lender receives proceeds of condemnation or insurance proceeds for application against the Loan, such prepayments and proceeds shall be applied first, to the reduction of principal, if any, in the inverse order of maturity."

vided that the second mortgage was intended to secure the "last" $200,000 of the Term Note.

JDC filed a claim for injunctive relief and damages and then filed a motion for a preliminary injunction. JDC claimed that if it did not receive a discharge of the second mortgage before August 31, 1992 VNB would not close the loan and it would be irreparably harmed.

### b. Preliminary Injunction

In order to address JDC's motion for a preliminary injunction, an evidentiary hearing was held on August 25. Based upon the evidence presented and interpretation of the various loan documents the Court issued its Findings of Fact and Opinion, (Paper 18), and a later Order, (Paper 19), granting JDC's motion for a preliminary injunction.

This Court specifically found "that the prepayment language [of the Term Note] can not be construed to cause the 100 Dorset Mortgage to collateralize the "last" $200,000. There is only one maturity under the loan at present, although the clause was initially written when there were two loans with two maturities." (Paper 18, p. 5).

As to the Bank's claim that the second mortgage on the Dorset St. property secured the entire $3.4 million dollar debt, this Court held that the 1990 second mortgage was only intended to secure $200,000. In support of

its finding, the Court cited the following: (1) language from the First Amendment to Loan Agreement[2], issued at the time of the 1990 loan restructuring; (2) JDC's unanimous consent to the 100 Dorset Mortgage as "securing ... the principal amount of [$200.000] ...,"[3]; (3) the amount of insurance required on the 100 Dorset property compared to the Tafts Corners property[4]; and (4) language from the 100 Dorset Mortgage itself.[5] The Court rejected the Bank's contention that the "Other Indebtedness" clause of the 100 Dorset Mortgage[6] served to cross-collateralize the remaining $3.2 million of the Term Note in addition to the $200,000 it expressly secured and held that in order to give effect to all the terms of the mortgage, it must be interpreted as applying only to any indebtedness which might exist between JDC and the Bank independent of the balance of the principal under the Term Note.

The 100 Dorset Mortgage provides that:

Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and LENDER shall discharge this Mortgage without charge to BORROWER. BORROWER shall pay all costs of recordation of said mortgage Discharge, if any.

In light of this language and the Court's finding that the 100 Dorset Mortgage was intended to secure only $200,000, the Court held that JDC was entitled to a preliminary injunction requiring the Bank to discharge and release the second mortgage upon pay-

**2.** The Amendment states: "[T]he second Mortgage on 100 Dorset shall secure only Two Hundred Thousand Dollars ($200,000.00) of the Term Loan Note." (*See* Amendment, Verif.Compl.Exh. D, p. 4).

**3.** *See* Amendment, Verif.Compl.Exh. D, p. 5 ¶¶ 5 and 5(g); *compare,* Unanimous Consent, Verif.Compl.Exh. G, p. 5.)

**4.** The 100 Dorset Mortgage requires insurance "in the amount of indebtedness." The Bank required title and hazard insurance in the full $3.4 million amount of its restructured loan on Tafts Corners but just $200,000 on 100 Dorset. *See* amendment Verif.Compl.Exh. D, p. 5, ¶¶ 5(f) and 5(i).

**5.** The language of the 100 Dorset Mortgage provides that it is:

"To SECURE to LENDER (a) the repayment of $200,000.00 of the indebtedness and other obligations evidence by BORROWER'S Note dated January 31, 1989, as amended (the "Note") in the principal sum of THREE MILLION FOUR HUNDRED THOUSAND Dollars ($3,400,000.00)."

This language was in contrast to the language in the two mortgages issued in 1989 which provided that each mortgage was to secure the entire indebtedness. *See* Verif.Compl. ¶¶ 12, 14.

**6.** The "Other Indebtedness" clause of the 100 Dorset Mortgage provided that it would secure

"(c) any and all other indebtedness, obligations and loans owed by borrower to lender now existing or hereafter arising ("other loans")."

ment of $200,000.[7]

JDC has now moved for summary judgment, requesting that the Court issue a permanent injunction requiring the Bank to release the 100 Dorset Mortgage and determine the question of liability under 27 V.S.A. § 464 against the Bank.

## II. *Standard for Summary Judgment*

Summary judgment may be granted the moving party only when it is shown that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). There is no genuine issue of material fact where a rational trier, viewing the evidence in the light most favorable to the nonmoving party, could not find in favor of that party. *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 191 (2d Cir.1991) (citations omitted). In ruling on a motion for summary judgment, a court must resolve all ambiguities and inferences from the underlying facts in favor of the non-moving party. *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314 (2d Cir.1992).

## III. *Discharge of The 100 Dorset Mortgage*

The Bank asserts that there are a variety of issues and facts which make a permanent injunction discharging the 100 Dorset Mortgage inappropriate at this time.

### a. Interpretation of the 100 Dorset Mortgage

■ The Bank continues to assert that the 100 Dorset Mortgage secured the entire $3.4 million loan it made to JDC despite the specific $200,000 limitation set out in the Mortgage itself. In addition to its previous arguments asserted in opposition to the preliminary injunction based on the "interlock-

ing nature of the documents," the Bank claims that the intent of the parties was for the 100 Dorset Mortgage to secure the entire $3.4 million debt and that extrinsic evidence clearly establishes that intent.

In a reversal of its earlier position, the Bank claims that extrinsic evidence is necessary to properly interpret the 1990 second mortgage.[8] The Bank claims that extrinsic evidence, in the form of discussions and oral agreements between the parties, will establish that the intent of the parties was for the 100 Dorset Mortgage to secure the entire $3.4 million of the Term Note.

■ Extrinsic evidence may be used to aid in the construction of a written instrument only if ambiguity is first found. *Isbrandtsen v. North Branch Corp.*, 150 Vt. 575, 577, 556 A.2d 81 (1988). A term in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation. *Trustees of Net Realty Holding Trust v. AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530 (1984).

In *Isbrandtsen* the Vermont Supreme Court stated:

[W]e believe it appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement. Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable.

*Isbrandtsen*, 150 Vt. at 579, 556 A.2d 81. However, the Court was quick to point out in a footnote that the parol evidence rule is still good law and that an oral agreement may not replace or modify a contemporaneous or sub-

---

7. As part of its decision, this Court ordered that upon release of the mortgage, JDC would provide the Bank with a new mortgage on the same property to provide security pursuant to Fed. R.Civ.P. 65(c). The Court directed that this new mortgage would be discharged should JDC obtain final judgment in its favor; otherwise, to remain in full force and effect.

8. In its Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Paper 12), the Bank argued that "[w]here, as here, the lan-

guage of an agreement is clear, the intention and understanding of the parties must be taken to be that contained in the Agreement," (Paper 12, p. 10), and that extrinsic evidence in the form of oral agreements is "irrelevant and inadmissible." (Paper 12, p. 8). The Court agrees that the language of the 100 Dorset Mortgage is clear as to the parties intention and its meaning. Unfortunately for the Bank, the Court does not subscribe to the "clear meaning" of the Mortgage that it does.

sequent written agreement. *Id.* at 579 n.*, 556 A.2d 81.

█ This Court has already "consider[ed] the circumstances surrounding the making of the agreement" when it looked to the language of the various documents which accompanied the 100 Dorset Mortgage in the 1990 restructuring. The Bank's assertion that oral discussions and agreements surrounding these documents assuring that the 100 Dorset Mortgage secured the entire Term Note should be considered as well is unavailing. A similar line of argument was rejected in *Tilley v. Green Mtn. Power Corp.*, 156 Vt. 91, 93, 587 A.2d 412 (1991), where the Court, applying *Isbrandtsen*, held that "[t]he rule permitting contracts to be read in light of surrounding circumstances should not be allowed, as it did here, to swallow up the parol evidence rule." As in *Tilley*, the oral agreement or understanding which the Bank alleges existed between the parties "was not simply a context giving meaning to the written agreement; rather, the verbal assurance was an oral contractual term directly contradicting the later written expression of agreement." *Tilley*, 156 Vt. at 93–94, 587 A.2d 412. Here, the extrinsic evidence the Bank seeks to introduce is oral and it *does* contradict "the later written expression of agreement" embodied in the 100 Dorset Mortgage. Such oral agreement or understanding constitutes parol evidence and may not be considered when inquiring into the *existence* of ambiguity.

This Court finds no ambiguity in the 100 Dorset Mortgage and thus "the contract language must be given effect in accordance with its plain, ordinary, and popular meaning." *Simpson Development Corp. v. Herrmann*, 155 Vt. 332, 335, 583 A.2d 90 (1990). Further discovery to shed light on the meaning of the 100 Dorset Mortgage is accordingly unnecessary.

The Court finds the Bank's continued "alternative" claim, that the second mortgage secured the last $200,000 of the $3.4 million principal under the Term Note, dangerously

close to spurious. As was clearly stated in this Court's earlier Findings of Fact and Opinion (Paper 18), the Bank's reliance on the Prepayment clause of the Term Note to support this claim is mistaken. The Bank's attempt to convince this Court otherwise, even in light of the alleged extrinsic supporting evidence, is anemic and does not bear repeating. Because there is only one maturity under the loan as restructured, this clause simply cannot be construed to cause the 100 Dorset Mortgage to collateralize the "last" $200,000.

This Court held earlier, (Paper 18), and embraces that interpretation again, that the language of the 100 Dorset Mortgage and the other surrounding loan documents only make sense if the Mortgage was to secure only $200,000 and not the entire principal under the Term Note.

b. Violations of Conditions or Covenants

The Bank argues that payment of the $200,000 secured by the 100 Dorset Mortgage should not compel it to discharge the Mortgage because JDC has failed to satisfy all the conditions secured by the Mortgage. The Bank claims that further discovery is necessary to bring to light additional violations of the conditions secured by the 100 Dorset Mortgage by JDC.

█ The law in Vermont provides that once a mortgagor makes payment of the entire debt secured by the mortgage and performs any other conditions specified in the mortgage deed she is entitled to have that mortgage discharged by the mortgagee. *Perkins v. Factory Point National Bank*, 137 Vt. 577, 580, 409 A.2d 578 (1979). *See also Retrovest Associates, Inc. v. Bryant*, 153 Vt. 493, 500, 573 A.2d 281 (1990) ("A mortgage must be discharged when the underlying debt is paid."); *Island Pond Nat. Bank v. Lacroix et al.*, 104 Vt. 282, 294, 158 A. 684 (1932) ("In the case of a mortgage securing the payment of a debt, the debt is the principal thing, and the mortgage is an incident of it ... and expires when the debt is paid.").[9]

9. *Perkins* seems to place a greater burden on the mortgagor than *Retrovest* or *Island Pond*. Whereas the latter two imply that any other conditions secured by the mortgage are no long- er binding upon payment of the "underlying debt" secured by the mortgage, *Perkins* requires the mortgagor to make payment of the underlying debt *and* satisfy any conditions secured by

The second mortgage contained 19 covenants, none of which JDC is alleged to have violated.[10] Indeed, the only relevant covenant requires the payment of the debt secured by the mortgage as a precursor to any discharge.[11] As stated by the Bank itself in its Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction (Paper 12, p. 7), "[p]aragraph 19 of the Mortgage gives the one condition that must be met before the discharge will be provided." As the second mortgage secures only $200,000, JDC has only to tender that sum to the Bank and the Bank must discharge the mortgage.

JDC has made this payment and under the unambiguous terms of the second mortgage, is entitled to have that mortgage retired. No material issues of fact remain concerning this aspect of the parties' dispute and accordingly, plaintiff JDC is entitled to summary judgment on Count I of its complaint.

## IV. *Liability under 27 V.S.A. § 464*

Section 464 of Title 27[12], like similar statutes elsewhere, is intended to prevent the "frustrating situation faced by a mortgagor who, having paid the full amount due under a mortgage and having requested the mortgagee to enter satisfaction of that mortgage on the record, is unable [to] obtain such a release from the mortgage." 8 ALR 4th 855.

█ Section 464 is penal in nature and therefore it must be strictly construed. *Perkins v. Factory Point National Bank*, 137 Vt. 577, 580, 409 A.2d 578 (1979). In order to recover damages under § 464 a plaintiff must show:

(1) payment of the entire debt secured, and full performance of whatever other conditions are specified in the mortgage deed, if any; (2) a request to the mortgagee to discharge the mortgage, which has not been complied with within ten days; and (3) tender to the mortgagee of its reasonable expenses in connection with discharging the mortgage. Furthermore, since the mortgagee has no duty to discharge the mortgage so long as the mortgage debt remains unpaid, the request for a discharge and the tender of expenses

---

the mortgage prior to her entitlement to a discharge. There are two possible explanations for this seemingly greater burden imposed by *Perkins*.

First, *Perkins* was a decision based on 27 V.S.A. § 464, a statute "penal in nature" which "must be strictly construed." *Perkins*, 137 Vt. at 580, 409 A.2d 578. (*See* discussion below.) Such a strict construction may make payment of the underlying debt by itself insufficient to impose the penalties under that statute although otherwise sufficient to discharge the mortgage.

Second it is possible to read the "underlying debt" of *Retrovest* and *Island Pond* to include not only the monetary obligation secured by the mortgage but also any other obligation. Such a reading is especially plausible in the following hypothetical. Suppose A and B are the owners of adjacent businesses. A may loan B $100,000 on the condition that B use half of the loan to improve the premises of B's business, which will in turn increase the value of A's business. To secure the loan, B provides A with a mortgage of his business. Included within the mortgage is language that the mortgage will not be discharged until B repays the $100,000 *and* has spent $50,000 to improve the premises. In such a case, payment of the underlying debt of $100,000 should not be sufficient to entitle B to a discharge of the mortgage until B has satisfied the $50,000 improvement condition.

This latter explanation is the most logical and is the one this Court adopts in determining when a mortgagor is entitled to a discharge. In doing so, the Court emphasizes that it is only conditions set out in the mortgage deed itself which must be satisfied and not conditions set out in other documents which may exist between the parties.

10. This Court found earlier that JDC was not in default of the 100 Dorset Mortgage due to various liens filed against the property. (Paper 18, Finding 20).

11. The 100 Dorset Mortgage at paragraph 19 provides:

*Release.* Upon payment of all sums secured by this Mortgage, this Mortgage shall become null and void and LENDER shall discharge this Mortgage without charge to BORROWER. BORROWER shall pay all costs of recordation of said Mortgage Discharge, if any.

12. 27 V.S.A. § 464 provides, in part, that:

"After performance of the condition, either before or after the breach thereof, if a mortgagee, assignee or the executor or administrator of either, fails to execute a discharge mentioned in sections 461–463 of this title within ten days after being requested to do so and after a tender of his reasonable charges, or to make, execute and acknowledge a deed of release of the mortgage, he shall be liable for damages occasioned thereby to be recovered in an action on this statute."

must be made after, or at the same time as, the satisfaction of the mortgage condition.

*Perkins* at 580, 409 A.2d 578 (citations omitted).

JDC claims that the Bank is liable under § 464 because it refused to discharge the 100 Dorset Mortgage when JDC tendered payment of the $200,000 secured by the Mortgage to the Bank on July 22, 1992.

■ The *Perkins* court did not address the question of "[w]hether a valid *tender* of payment, as opposed to actual payment, is sufficient to give rise to liability under § 464" because the plaintiffs in that case did not make a valid tender in the first place. *Perkins* at 581, 409 A.2d 578 (emphasis in original). However, it appears that the rule has long been that tender and refusal of payment is equivalent to performance. *Hepburn v. Auld,* 5 U.S. (1 Cranch) 321, 2 L.Ed. 122 (1801). When a creditor declares that he will not accept money when delivered, actual production and offer of the money is unnecessary. *Buchannon v. Billings,* 127 Vt. 69, 75, 238 A.2d 638 (1967) ("In such a case, an offer to perform would be a vain and idle ceremony, which the law never requires."). Therefore, this Court holds that a valid tender of payment is sufficient to give rise to liability under § 464.

The Bank contends that it cannot be liable under § 464 because its refusal to discharge the mortgage was based on a good faith belief that JDC had not satisfied the conditions of the mortgage. Section 464 makes no distinction between a mortgagee who "fails to execute a discharge" based on a good faith belief that the mortgagor has not performed the condition secured by the mortgage and one who does so in bad faith. There appears to be no law on this question in Vermont. Support for the Bank's contention can be found in other jurisdictions,[13] but so can authority rejecting that contention.[14]

■ This Court believes that consideration of a mortgagee's motive in refusing to discharge a mortgage upon a valid tender of payment, a request to discharge and the tender of reasonable expenses in connection with discharging the mortgage is appropriate. Were it otherwise, a mortgagee, who in good faith believes that a mortgagor has not performed the conditions secured by the mortgage but is ultimately proven wrong, would be placed between the proverbial rock and a hard place—it could pursue its good faith belief at the risk of what could be a substantial penalty and thereby protect what it believes to be its valid right to the mortgage or it could forego its claim, avoiding the risk of penalty under § 464 but losing any rights and protection provided by the mortgage.

■ Though this Court does have some reservations concerning the Bank's motives at present, whether the Bank acted in good or bad faith is clearly a fact question and requires further development.[15] According-

---

13. *See Mr. U. Inc. v. Mobil Oil Corp.,* 197 Neb. 612, 616, 249 N.W.2d 909, 911 (1977) (proof must be clear that refusal to discharge mortgage was palpably unreasonable, absolute, arbitrary, and unaccompanied by any bona fide, although mistaken, claim of right); *Shelton v. Wilson,* 274 Mich. 433, 264 N.W. 854 (1936) (mortgagor not entitled to statutory penalty where mortgagee refused to discharge mortgage based on honest belief mortgage not satisfied); *Grissom v. Dye,* 269 P.2d 367, 370 (Okl.1953) (mortgagee not subject to penalty because of belief in good faith that mortgage obligations unfulfilled).

14. *See Morrill v. Title Guaranty & Surety Co. et al.,* 94 Wash. 258, 264, 162 P. 360 *reh. den.* 94 Wash. 266, 163 P. 733 (1917) (statute imposing penalty for failure to discharge mortgage does so without regard to the good or bad faith of the holder of the mortgage); *Malarkey v. O'Leary,* 34 Or. 493, 56 P. 521 (1899) (good faith belief that

mortgage not fulfilled irrelevant in assessing statutory penalty for failure to discharge mortgage).

15. What gives the Court pause as to the Bank's motive is the Bank's counterproposal to JDC's tender of the $200,000 and request to discharge the loan. The Bank denied that request but suggested that if JDC paid the $200,000 *and* agreed to a new increased amortization and lower rate interest terms on the Term Note it would discharge the 100 Dorset Mortgage. *See* Affidavit of Peter Judge (Paper 10) and Letter from Charles Matthews to Peter Judge (Paper 1, Exh. M). Whether this represented a good faith attempt to reach a compromise or was a less than benign attempt to squeeze JDC for more concessions before releasing the mortgage could be one focus of the factual development.

ly, resolution of liability under Count III is not appropriate at this time under a motion for summary judgment.

## V. *Conclusion*

Plaintiff's Motion for Summary Judgment on Count I is GRANTED. Defendant is to release the current mortgage on 100 Dorset. Plaintiff's Motion for Summary Judgment on Count III is DENIED.