# Trustees of Net Realty Holding Trust v. AVCO Financial Services of Barre, Inc., and AVCO Financial Services, Inc.

[476 A.2d 530]

No. 82-530

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed March 16, 1984

Motion for Reargument Denied April 4, 1984

244

*Smith, Harlow & Liccardi,* Rutland, for Plaintiffs-Cross-Appellants.

*John J. Welch, Jr.,* Rutland, for Defendants-Appellants.

**Peck, J.** Defendants appeal from a judgment by the Washington Superior Court that they were in breach of a lease with plaintiffs, and therefore liable for past due rent and con-

tinuing rent for the remainder of the lease term. Plaintiffs cross-appeal, claiming that the court erred in determining the proper calculation for annual increases in those rental payments. We affirm as to both appeals.

Plaintiffs, as the trustees of Net Realty Holding Trust (Net Realty), own the Rutland Shopping Plaza, located on Merchant's Row in Rutland, Vermont. On July 6, 1976, Pacific Finance Loans Corporation, a tenant in one of the plaza's stores, assigned its lease to defendant, AVCO Financial Services of Barre, Inc. (AVCO). AVCO assumed the lease subject to certain modifications in clauses referring to the leasehold term, monthly maintenance fees, annual rent and the option to renew. AVCO's performance under the modified lease was guaranteed by its parent corporation, defendant AVCO Financial Services, Inc.

The term of the lease as modified was to extend from July 1, 1976, through June 30, 1981, with an option to renew for an additional term to expire on June 30, 1986. AVCO exercised its option to renew on December 6, 1980.

For economic reasons, AVCO ceased doing business at the Rutland Shopping Plaza location in the spring of 1981, and in June of that year closed the Rutland office and removed all its personnel, furnishings and equipment.

The dispute which resulted in this action arose on June 4, 1981. On that date, Net Realty sent AVCO a notice of a rent increase. The latter immediately objected to the increase, claiming that it had been incorrectly calculated under the formula provided in the modified lease. AVCO believed the proper rent should have been $1,046.89 per month rather than the $1,267.76 claimed by Net Realty. Though the company had ceased doing business at its Rutland branch, it continued to pay rent of $1,046.89 until January of 1982. Claiming AVCO had defaulted in its rent obligations, and that the premises had been vacated, Net Realty unilaterally terminated the lease as authorized by provisions in the lease agreement. Net Realty then initiated this action to recover past due rent, damages, and continuing rent for the remainder of the unexpired term under a penalty clause contained in the lease.

The trial court determined that AVCO had vacated the store, and that Net Realty had properly terminated the lease

and re-entered the premises under the terms of the agreement, thereby invoking the penalty clause. The court also found, however, that Net Realty's rent calculations were incorrect, and ordered future calculations under the penalty clause to be made accordingly. We will examine first the termination issue raised by defendants on their appeal.

## I.

The penalty provision contained in the lease provided, inter alia, for the continued payment of rent in the event the lease was terminated by the lessor for certain specified reasons set forth elsewhere in the lease. Among these reasons is vacation of the premises by the lessee. On December 18, 1981, Net Realty purportedly terminated the agreement, claiming AVCO had vacated the premises. Thereafter, relying on the penalty provision, plaintiffs argue that defendants are liable for continuing rentals.

Defendants contend that because they continued paying rent until January, 1982, the premises had not been vacated prior to that date. Therefore, they reason, the penalty provision did not become operative and they are not liable for continuing rent.

█ It is the law of this jurisdiction that findings of fact are for the trial court and must stand if there is any credible evidence that fairly and reasonably supports them, *In re Muzzy*, 141 Vt. 463, 470, 449 A.2d 970, 973 (1982), and they are not clearly erroneous. *Beyel* v. *Degan*, 142 Vt. 617, 619, 458 A.2d 1137, 1138 (1983) ; V.R.C.P. 52.

█ In the case at bar, the lease reserved to Net Realty, as landlord, the right to re-enter the premises if they became vacant during the term. Given its commonly recognized meaning in the context of this matter, the word "vacant" is clear and unambiguous: it means empty, unfilled, or unoccupied, *Black's Law Dictionary* (rev. 5th ed. 1979) ; *The American Heritage Dictionary of the English Language* (1979). Thus, the court was correct in applying this meaning as representing the intent of the parties that occupation of the premises, rather than the payment of rent, controlled the issue of vacancy. "The law will presume that the parties meant, and

intended to be bound by, the plain and express language of their undertakings." *Vermont State Colleges Faculty Federation* v. *Vermont State Colleges*, 141 Vt. 138, 144, 446 A.2d 347, 350 (1982).

There was uncontroverted evidence that defendants ceased doing business at the leased premises in June of 1981 and removed all indicia of possession; in short, the premises became "vacant" at that time. This evidence fairly and reasonably supports the court's finding of vacation; accordingly, the finding must stand. *In re Muzzy, supra.*

■ We find no error in the trial court's determination that the premises were vacated prior to plaintiffs' termination of the lease. Therefore, the penalty provision was properly invoked. We now turn to the rent calculation issue raised by plaintiffs' cross-appeal.

## II.

Under the lease, the rent was adjusted annually to correspond to the percentage increase in the United States Department of Labor's Consumer Price Index (C.P.I.). The rent adjustment was calculated by subtracting the C.P.I. figure for the date on which the lease was executed (base index) from the C.P.I. figure for the preceding April of each new rental year. The difference would be divided by the base index to arrive at the percentage increase in the C.P.I. over the preceding years. The rent for the base year would then be adjusted by this percentage to obtain the rent amount for the ensuing year.

The question to be resolved is whether 1966, the year of the original lease, or 1976, the year in which defendants assumed the lease and the lease was modified, should be used in determining the base index. The lease describes the base index as "the month and year during which this lease was executed by the landlord." Plaintiffs claim that this means the date the lease was originally executed between its predecessor in title and defendants' predecessor, that is, June of 1966. This would mean a substantially greater difference between the current C.P.I. and the base index, and therefore a much greater increase in the rentals to be paid. The C.P.I. for June of 1966 was 97.1, and would have required rent for 1982 to be adjusted

by 192.17%, rather than 65.8% if the C.P.I. for 1976 was used, producing a total monthly rental of $1,267.76.

The court below found, in accordance with defendants' contention, that the base date intended by the parties was the date on which the lease was assumed by defendants, July, 1976.

■ ■ The court decided that the lease was ambiguous with respect to the phrase "the month and year during which this lease was executed." Therefore it looked to the circumstances surrounding the assignment in 1976 to resolve the issue. The court felt that if the parties had intended to use 1966 as a base year, they would have specifically mentioned it in the lease modification. In addition, the court concluded: "[i]t seems thoroughly illogical that having negotiated rent in 1976, that a rent increase to be effective in 1981 and years thereafter, would be measured against a benchmark 10 years before the last negotiation of rent." However, the logic of an agreement, without more, is not a proper concern for the court in the absence of public policy considerations, fraud, overreaching, and similar concerns. If the meaning of the provisions of an agreement are otherwise reasonably clear, the law will presume the intent and understanding of the parties to be that which the agreement declares. *Karlen Communications, Inc.* v. *Mt. Mansfield Television, Inc.*, 139 Vt. 615, 617, 433 A.2d 290, 292 (1981).

■ A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation. *Young* v. *Van Zandt*, — Ind. App. —, —, 449 N.E.2d 300, 307 (1983) ; *Coker* v. *Coker*, 650 S.W.2d 391, 394 (Tex. 1983). The question whether a term is ambiguous is for the court to decide as a matter of law, *id.; McGary* v. *Westlake Investors*, 99 Wash. 2d 280, 285, 661 P.2d 971, 974 (1983), subject to review through the appellate procedure. Once this threshold determination is made, a court may proceed to one of two avenues. If the provision is unambiguous, it must be given effect in accordance with its plain, ordinary, and popular sense. *Douglass* v. *Skiing Standards, Inc.*, 142 Vt. 634, 636, 459 A.2d 97, 98 (1983) ; *Cheever* v. *Albro*, 138 Vt. 566, 569, 421 A.2d 1287, 1289 (1980).

 If the court determines that the provision is ambiguous, the meaning intended by the parties becomes a question for the trier of fact. *Rich* v. *Chadwick*, 139 Vt. 508, 510, 430 A.2d 1280, 1282 (1981). Only if the provision is found to be ambiguous may extrinsic evidence be used to aid the trier of fact. *Fairbrother* v. *Adams*, 135 Vt. 428, 431, 378 A.2d 102, 105 (1977); *Union Rural Electric Association* v. *Public Utilities Commission*, — Colo. —, —, 661 P.2d 247, 251 (1983).

As mentioned above, the lower court concluded that the phrase "during which this lease was executed" was ambiguous. It then looked to the circumstances surrounding the assignment to determine the subjective intent of the parties. We believe the court erred in finding an ambiguity in the lease, and therefore improperly considered the extrinsic evidence. However, as will be demonstrated below, the result reached by the court remains the same regardless of the error.

 Plaintiffs argued that on its face the disputed language referred to the original lease of 1966. Without more, this contention would have considerable merit. As a general rule, the mere assignment of a lease by a lessee, and the corresponding assumption by the assignee, does not create a new tenancy. *Horstman* v. *Glatt*, 436 S.W.2d 639, 642 (Mo. 1969); 49 Am. Jur. 2d *Landlord and Tenant* § 392, at 413. However, if the lessor either enters into a direct leasing arrangement with the assignee, or if the two parties materially vary the terms of the original lease, *a new tenancy is created,* thus releasing the lessee from his obligations to the lessor under the original lease. 3 S. Williston, Williston on Contracts § 418 (3d ed. 1960); R. Schoshinski, American Law of Landlord and Tenant § 8:12, at 563 (1980); see also *Net Realty Holding Trust* v. *Giannini*, 13 Mass. App. 273, 432 N.E.2d 120, 123 (1982).

 In the present case, the defendants and Net Realty's predecessor in interest as lessor agreed to modifications in the lease which, among other things, raised the then current rent. The most important change, however, was the inclusion of a provision for annual rent escalation that did not previously exist in the lease. This arrangement would

materially increase the lessee's liabilities if he were compelled to honor it, and thus had the effect of creating a new tenancy between Net Realty and defendants as of July, 1976. Therefore, we hold that on the facts of this case a new lease was created by the modification, and the correct year to be used in determining the year "during which this (new) lease was executed" was 1976. Although the trial court erred in its method, it reached the same conclusion. We have held on several occasions that we will not reverse a correct result merely because it is reached for the wrong reason. *Rutz* v. *Essex Junction Prudential Committee,* 142 Vt. 400, 414, 457 A.2d 1368, 1375 (1983) ; *Gilwee* v. *Town of Barre,* 138 Vt. 109, 111, 412 A.2d 300, 301 (1980). Accordingly, the decision below must also be affirmed on the issue raised by Net Realty's cross-appeal.

*Affirmed.*