# Patricia C. Isbrandtsen v. North Branch Corporation

[556 A.2d 81]

No. 86-168

Present: **Allen, C.J., Peck, Gibson and Dooley, JJ., and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed December 9, 1988

*Fitts, Olson, Carnahan, Anderson & Bump*, Brattleboro, for Plaintiff-Appellant.

*Crispe & Crispe*, Brattleboro, for Defendant-Appellee.

**Gibson, J.** Plaintiff, as grantee, sued defendant-grantor for declaratory judgment and injunctive relief under a deed executed in 1969. Defendant counterclaimed for similar relief pursuant to a covenant in the deed providing for restrictive use of the property. After trial, the court rendered declaratory judgment in favor of defendant and enjoined plaintiff from renting out her property absent defendant's express written agreement. Plaintiff appeals. We modify the judgment order slightly and, as modified, affirm.

## I.

The relevant facts are as follows. Since the early 1960s, defendant has owned and operated an innkeeping business in Dover, Vermont, next to the Mt. Snow ski area. The business orginally consisted of four adjoining townhouses, each containing four bedroom units. While each townhouse could be occupied by one fam-

ily, the bedrooms were designed to open onto a common hallway so that they could also be rented individually.

The ground floor level of the adjoining townhouses contained areas common to all, known as the "club": a kitchen, restaurant and sitting room. The furniture in these common areas, together with the recreational facilities, ski trails, parking areas and assorted outbuildings, were owned and operated by defendant. In order to maintain these facilities and provide necessary services to owners and guests, defendant hired and supervised a staff consisting generally of a chef, food servers, housecleaners and maintenance people.

Although the common areas were the property of defendant, the townhouses were individually owned. Defendant's business depended in part upon rental income derived from lessees of owners of the townhouses who did not use them on a year-round basis. Thus, the development was designed so that temporarily unoccupied townhouses, or parts thereof, could be rented out to paying guests. This benefited the owners, who derived a percentage income from the rentals, and it assured defendant the income required to continue providing the maintenance services necessary to all occupants, both permanent and temporary.

At issue in this case is the following paragraph contained in the deed from defendant to plaintiff:

> The premises hereby conveyed shall be used only for private, single-family residence purposes, except that, under express agreement between Grantor and Grantee, the premises may be rented or used for paying guests in connection with Grantor's operations.

The rental arrangements made by defendant were in the form of "Business Use Agreements" executed by the individual townhouse owners. These agreements authorized defendant to rent the properties to paying guests and were an integral part of the corporation's business from its inception.

At trial plaintiff argued that absent an express agreement between herself and defendant, there was no restriction under the deed on her ability to rent her house to paying guests without defendant's knowledge or consent. Defendant argued that this paragraph specifically prohibited any such rental except by and with its express agreement.

The trial court found that the deed's restriction to "private, single-family residence purposes" allowed only residential use of the property, and that the immediately following words made it clear that the grantee could not unilaterally rent the premises for profit. On that basis, the court entered a declaratory judgment in favor of defendant and enjoined plaintiff from using her unit "for purposes other than private single family residence for herself and her immediate family . . . except with the express written consent of defendant."

Plaintiff subsequently moved to amend the injunction by striking the words "for herself and her immediate family" on the grounds that this language was unnecessarily restrictive and beyond the intent of the original deed. The trial court denied the motion, finding the amendment unwarranted since the inclusion of the challenged language "in no way inhibits the plaintiff and her immediate family from inviting guests, consistent with the provision of the contract, to use the unit."

Plaintiff raises two issues on appeal. First, she argues that the trial court erred in finding that the disputed language of the deed unambiguously precluded her from renting out the property without the express written consent of defendant. Second, she contends that the court erred in denying her motion to amend the injunction.

## II.

The question of whether a contract term is ambiguous is a matter of law for the court to decide. *Trustees of Net Realty Holding Trust* v. *AVCO Financial Services of Barre, Inc.*, 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). A provision in a contract is ambiguous only to the extent that reasonable people could differ as to its interpretation. *Id.* Here, plaintiff argues that the deed contains internal inconsistencies which render its terms ambiguous and therefore subject to rules of construction that would warrant judgment in her favor. In particular, plaintiff contends that before the restriction on commercial rental can be given effect, there must first be an agreement between the parties, and that since there is no such agreement, plaintiff is free to do as she wishes.

Before extrinsic evidence may be used to aid in the construction of a written instrument, ambiguity must first be found. *Id.* at

249, 476 A.2d at 533; see generally Annotation, *The Parol Evidence Rule and Admissibility of Extrinsic Evidence to Establish and Clarify Ambiguity in Written Contract*, 40 A.L.R.3d 1384, 1389 (1971). In determining whether an ambiguity exists, many courts have adopted the traditional "four corners" test or "plain meaning rule," which states that if a writing appears to be plain and unambiguous on its face, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature: "If the term in question does not have a plain meaning it follows that the term is ambiguous." J. Calamari & J. Perillo, The Law of Contracts § 3-10, at 166-67 (3d ed. 1987).

A number of courts, recognizing that "plain meaning" cannot exist in a vacuum, have allowed the admission of evidence as to the circumstances surrounding the making of the agreement as well as the object, nature and subject matter of the writing. See, e.g., *Pacific Gas & Elec. Co.* v. *G.W. Thomas Drayage & Rigging Co.*, 69 Cal. 2d 33, 40, 442 P.2d 641, 645, 69 Cal. Rptr. 561, 565 (1968). This approach has been supported by numerous commentators and authorities. See Restatement (Second) of Contracts § 212 comment b (1981) ("Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties."); J. Calamari & J. Perillo, Contracts § 3-10, at 167 (plain meaning rule criticized because "the meaning of words varies with the 'verbal context and surrounding circumstances and purposes in view of the linguistic education and experience of their users and their hearers or readers (not excluding judges).' ") (quoting 3 A. Corbin, Corbin on Contracts § 579, at 225 n.74 (1964 supp.)); 3 A. Corbin, Corbin on Contracts § 542, at 100-02 (1960) ("some of the surrounding circumstances always must be known before the meaning of the words can be plain and clear . . . ."); 9A V.S.A. § 2-202, comment 1(c) (in interpreting written instrument, extrinsic evidence of course of dealing, usage of trade, or course of performance may be introduced without necessity of finding ambiguity in language of instrument).

Previous Vermont cases are unclear as to which standard, if any, has been adopted by the courts of this state in determining the presence or absence of ambiguity. Compare, e.g., *Pond* v.

*Carter*, 126 Vt. 299, 309, 229 A.2d 248, 255 (1967) ("[i]t is not what provisions the [writing] fails to stipulate but rather what they actually do stipulate and the language used to express its terms which controls in deciding the question of ambiguity.") with *Freeguard* v. *Bingham*, 108 Vt. 404, 406, 187 A. 801, 802 (1936) ("[b]ut if the language of the instrument, interpreted in connection with, and in reference to, the nature and condition of the subject matter at the time it was executed, and the obvious purpose the parties had in view, is clear and unambiguous, its meaning is a question of law for the court . . . .") and *Davidson* v. *Vaughn*, 114 Vt. 243, 246, 44 A.2d 144, 146 (1945) (same); cf. *Dunsmore* v. *Co-operative Fire Ins. Ass'n*, 131 Vt. 14, 16, 298 A.2d 853, 854 (1972) (basis upon which Court found absence of ambiguity not articulated).

Given this background, we believe it appropriate, when inquiring into the existence of ambiguity, for a court to consider the circumstances surrounding the making of the agreement. Ambiguity will be found where a writing in and of itself supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable. See *McMillan* v. *Anchorage Community Hospital*, 646 P.2d 857, 863 (Alaska 1982).*

If ambiguity is found on that basis, the court may then rely on subordinate rules of construction in order to interpret the meaning of the disputed terms. *Fairbrother* v. *Adams*, 135 Vt. 428, 429, 378 A.2d 102, 104 (1977). If, however, no ambiguity is found, then the language must be given effect in accordance with its plain, ordinary and popular sense. *Trustees of Net Realty Holding*

---

* This approach should not be confused with the role of the parol evidence rule. That rule, one not of evidence but of substantive law, states that whenever contractual intent is sought to be ascertained from among several expressions of agreement by the parties, an earlier tentative agreement will be rejected in favor of a later, final expression. J. Calamari & J. Perillo, The Law of Contracts § 3-2, at 135 (3d ed. 1987). The rule generally acts to bar evidence of statements made prior to or contemporaneous with the written instrument which would vary the terms of the final agreement. *Hathaway* v. *Ray's Motor Sales, Inc.*, 127 Vt. 279, 282, 247 A.2d 512, 514 (1968).

Should courts be concerned that admitting evidence as to the making of the agreement would circumvent the parol evidence rule, protective devices are available. For example, the evidence could be presented through an offer of proof, or conditionally admitted subject to a motion to strike.

*Trust*, 144 Vt. at 248, 476 A.2d at 533; *Douglass* v. *Skiing Standards, Inc.*, 142 Vt. 634, 636, 459 A.2d 97, 98 (1983).

In making its determination as to ambiguity in the instant case, the trial court properly considered evidence as to the circumstances under which the conveyance was made. Some of those circumstances were recited at the outset of the opinion. In addition, the following facts are also pertinent to a determination of whether the language in dispute is truly ambiguous.

In the late 1960s, plaintiff and her family stayed at North Branch (presumably under a rental agreement as described above) on at least three separate occasions before her husband decided to purchase a townhouse for her. This purchase, which was a gift from Mr. Isbrandtsen to his wife, consisted of one of two new townhouses built in 1969, both of which were joined to the original four buildings. The new townhouses, which had no common "club" areas (having been built after the main buildings), each contained six bedroom units.

At the time defendant conveyed the property to plaintiff, she was asked, like every other owner, to sign a "Business Use Agreement" allowing defendant to rent out the property when she was not in actual occupancy. She declined to do so, advising defendant that she and her family intended to occupy the entire townhouse for their own use. It was uncontested at trial that of the other townhouse owners, all five had executed a "Business Use Agreement."

Plaintiff acknowledges that the restriction to use the property only "for private, single-family residence purposes" limits its use to residential purposes as opposed to business or commercial uses. The clause immediately following that phrase provides one exception to the restriction: the premises may be rented or used for paying guests *under express agreement* between defendant and the owner. The words "under express agreement" were inserted for a purpose and may not be ignored. The law is clear that an agreement must be viewed in its entirety, with an eye toward giving effect to all material parts in order to form a harmonious whole. *Town of Lyndon* v. *Burnett's Contracting Co.*, 138 Vt. 102, 106, 413 A.2d 1204, 1206 (1980); *In re Stacey*, 138 Vt. 68, 72, 411 A.2d 1359, 1361-62 (1980).

While the language of the restrictive clause is somewhat awkward, that in itself does not render it ambiguous. "If a contract, through inartfully worded or clumsily arranged, fairly admits of

but one interpretation, it may not be said to be ambiguous or fatally unclear." *Allstate Ins. Co.* v. *Goldwater,* 163 Mich. App. 646, 648, 415 N.W.2d 2, 4 (1987). Likewise, the fact that a dispute has arisen as to proper interpretation does not automatically render the language ambiguous. Such an approach would merely invite court interference any time a litigant alleged a dispute as to a contractual term.

Viewing the language of the deed in light of the surrounding circumstances, we hold that only one reasonable interpretation exists: that absent an express agreement between plaintiff and defendant, plaintiff is prohibited by the deed from renting her property to paying guests. Likewise, absent such an express agreement, defendant may not rent out plaintiff's property in part or in whole. The restriction serves to protect defendant's interest in maintaining and operating its innkeeping business while serving also to protect plaintiff, who may not want her property rented out indiscriminately to transient individuals.

## III.

■ Plaintiff's second argument on appeal is that the injunctive language limiting occupancy to plaintiff and her immediate family transforms the deed's restriction as to *type* of use into one limiting *who* may may make use of the property. Defendant argues that the court, sitting as a court of equity, was within its power in imposing stringent injunctive relief against plaintiff, relying on *McDonough* v. *W.W. Snow Constr. Co.,* 131 Vt. 436, 306 A.2d 119 (1973).

The language in the deed restricting use of the townhouse to "private, single-family residence purposes" simply limits the use to residential (as opposed to business or commercial) purposes for one family. See *Orange Beach Marina, Inc.* v. *Warner,* 500 So. 2d 1068, 1071 (Ala. 1986); see generally Annotation, *Restrictive Covenant Limiting Land Use to "Private Residence" or "Private Residential Purposes": Interpretation and Application,* 43 A.L.R.4th 71 (1986). In this context, residential purposes may be for oneself, one's family or one's invited guests. The trial court recognized this when it stated, in denying plaintiff's motion for amendment of the judgment order, that the injunction "in no way inhibits the plaintiff and her immediate family from inviting

guests, consistent with the provision of the contract, to use the unit."

Defendant does not argue that plaintiff cannot invite guests to use her townhouse, although it may be justifiably concerned that any such "invitation" may be used as a means of avoiding the restriction against unconsented-to paying guests. That is not a sufficient basis, however, upon which to insert into a judgment surplus words which may give rise to later misunderstandings. Since it is clear that the trial court did not intend the injunction to prohibit plaintiff from inviting nonpaying guests into her townhouse, it was error to insert the words "for herself and her immediate family" into the order.

*The judgment order is modified to delete the words "for herself and her immediate family," and, as so modified, the order is affirmed.*