John J. LUPIEN, Sr., Plaintiff-Appellant,

Hansen–Lupien Corporation, Plaintiff–Counter–Defendant–Appellant,

v.

CITIZENS UTILITIES COMPANY, Defendant–Counter–Claimant–Appellee.

Docket No. 97–9493.

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1998.

Decided Oct. 28, 1998.

the District of Vermont (J. Garvan Murtha, *Chief Judge* ) entered August 14, 1997, granting summary judgment dismissing H–L's complaint, and (2) a judgment of the same court entered October 21, 1997, and amended November 3, 1997, granting summary judgment in favor of the Citizens Utilities Company ("CUC") on its counterclaim for breach of contract. Although we conclude that the District Court properly dismissed plaintiffs' complaint, we hold that CUC was not entitled to summary judgment on its counterclaim because it failed to allege or show actual damages. We therefore affirm the District Court's dismissal of H–L's complaint but reverse its grant of summary judgment on the counterclaim and remand for further proceedings.

## BACKGROUND

H–L is a closely-held corporation that operates a small hydroelectric generating facility in North Troy, Vermont. In 1992, H–L entered into a power purchase agreement ("the PPA") with CUC, a Delaware utility company that provides power to consumers in Vermont. The PPA requires CUC to purchase all power generated by H–L's plant for thirty years at a fixed or "levelized" rate of $0.08 per kilowatt-hour ("kwh"). The PPA further provides that ownership of H–L's plant will be transferred to CUC at the end of the thirty-year period.

At the time the parties entered the PPA, the levelized rate of $0.08 per kwh exceeded the predicted market rates for the contract's early years but fell short of the predicted market rates for the contract's final years. The PPA therefore provides for the calculation of a Cumulative Present Value Difference ("CPVD"), which measures the difference over the life of the contract between the amount CUC pays for H–L's power and the amount it would have paid if the PPA had required it to purchase the power at graduated rates reflecting the predicted market rates for each year of the contract.[1] Section

Albert G. Besser, Law Offices of Russell D. Barr, Stowe, VT (Russell D. Barr, of counsel), for Plaintiff–Appellant and Plaintiff–Counter–Defendant–Appellant.

Robert B. Hemley, Gravel and Shea, Burlington, VT (Craig Weatherly, of counsel), for Defendant–Counter–Claimant–Appellee.

Before: CARDAMONE, CALABRESI, and STRAUB, Circuit Judges.

STRAUB, Circuit Judge:

Hansen–Lupien Corporation and John J. Lupien, Sr., ("H–L") appeal from (1) a judgment of the United States District Court for

1. Specifically, the PPA defines the CPVD as: [t]he accumulated value of each monthly payment received by [H–L at the levelized PPA rate], minus the accumulated value of each monthly payment that [H–L] would have received if the monthly payment was made at [the predicted annual market rates], plus inter-

5.3 of the PPA requires H–L to "acquire either a policy of insurance, a bond, a guarantee, a letter of credit, or a self-financed fund, reasonably acceptable to [CUC] and sufficient at all times during the term of this Agreement to pay [H–L]'s capital replacement and maintenance expenses and the [CPVD]." In the event that H–L exercises its right to terminate the PPA, § 6.3 of the PPA obligates H–L to pay CUC the CPVD within thirty days after the termination.

H–L's plant went into operation in the fall of 1993. H–L never acquired a policy of insurance, a bond, a guarantee, a letter of credit, or a self-financed fund sufficient to pay the CPVD. In November 1995, CUC sent H–L a formal "Notice of Default," alleging eight defaults including H–L's failure to comply with PPA § 5.3. In February 1996, CUC notified H–L of its intention to terminate the PPA. In March 1996, the contract terminated pursuant to CUC's February notice.

H–L subsequently initiated this breach of contract action in state court, alleging that CUC had wrongfully terminated the PPA.[2] CUC removed the case on the basis of diversity jurisdiction and counterclaimed for damages based on H–L's breach of the PPA. In May 1997, CUC moved for summary judgment dismissing H–L's complaint. In its motion, CUC alleged that H–L had defaulted by failing to comply with PPA § 5.3, but did not press any of the other defaults alleged in its Notice of Default. The District Court granted CUC's motion and entered judgment on August 14, 1997. CUC then moved for summary judgment on its counterclaim, which the District Court granted in October 1997. Judgment was subsequently entered against H–L in the amount of $78,736.00.

**DISCUSSION**

H–L argues that the District Court erred when it granted summary judgment dismissing H–L's complaint and awarding CUC recovery on its counterclaim. "We review a district court's grant[s] of summary judgment *de novo,* construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor." *Maguire v. Citicorp Retail Servs., Inc.,* 147 F.3d 232, 235 (2d Cir.1998) (citation omitted). We will affirm "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

**I.**

The District Court dismissed H–L's complaint after concluding that H–L defaulted on the PPA by failing to provide security for the CPVD. H–L argues that this conclusion was unwarranted because: (1) the PPA does not unambiguously require H–L to provide such security, and (2) a genuine issue of fact exists as to whether CUC waived any right it had to enforce such a requirement. We reject both contentions.[3]

In our view, § 5.3 of the PPA unambiguously requires H–L to provide CPVD security at all times during the term of the agreement. Under Vermont law, whether a contract term is ambiguous is a matter of law. *See In re New England Tel. & Tel. Co.,* 159 Vt. 459, 466, 621 A.2d 232, 237 (1993). The Vermont Supreme Court has held that in determining whether a contract is ambiguous, a court may "consider the circumstances surrounding the making of the agreement." *Isbrandtsen v. North Branch Corp.,* 150 Vt. 575, 579, 556 A.2d 81, 84 (1988). "Ambiguity will be found where a writing in and of itself

est from the date on which each monthly payment was made by [CUC].

**2.** In its complaint, H–L also asserted claims based on promissory estoppel, breach of the covenant of good faith and fair dealing, and intentional infliction of emotional distress. CUC argues that H–L has abandoned these claims by failing to brief any claimed error with respect to the District Court's disposition of them. *See LoSacco v. City of Middletown,* 71 F.3d 88, 92–93 (2d Cir.1995) (explaining that issue is abandoned where not raised in appellate brief). H–L coun-

ters it has not abandoned the claims because they rise or fall with H–L's breach of contract claim. We need not resolve this dispute, as we affirm the District Court's dismissal of H–L's breach of contract claim.

**3.** We have also considered and rejected the other arguments advanced by H–L as to the dismissal of its complaint and the propriety of several pretrial orders and actions by the District Court. We also reject H–L's request that this case be assigned to a different judge on remand.

supports a different interpretation from that which appears when it is read in light of the surrounding circumstances, and both interpretations are reasonable." *Id.* "If . . . no ambiguity is found, then the language must be given effect in accordance with its plain, ordinary and popular sense." *Id.* at 579, 556 A.2d at 85.

> Section 5.3 of the PPA provides:
>
> [H–L] will at all times during the term of this Agreement acquire either a policy of insurance, a bond, a guarantee, a letter of credit, or a self-financed fund, reasonably acceptable to [CUC] and sufficient at all times during the term of this Agreement to pay [H–L]'s capital replacement and maintenance expenses and the Cumulative Present Value Difference.

H–L argues that this provision does not stand alone and must be read in conjunction with § 5.1 and § 5.2(b) of the PPA. Section 5.1 grants CUC a security interest in the hydroelectric project, subordinate to any mortgage interest granted by H–L pursuant to § 5.2. Subsection 5.2(b) provides:

> Unless [H–L] provides alternative security to [CUC] in an amount and quality as to reasonably assure [CUC] that the Cumulative Present Value Difference will be repaid to [CUC] as provided herein, which assurance shall be acceptable to [CUC] in its reasonable discretion, [H–L] shall not Mortgage all or any portion of the Project and/or all or any of [H–L]'s right, title or interest in, to or under this Agreement in an amount, which when accumulated with any other Mortgage outstanding, exceeds eighty percent (80%) of the fair market value of the Project from time to time.

According to H–L, "alternative security" in § 5.2(b) refers to the security requirement imposed by § 5.3, and § 5.3 can therefore reasonably be interpreted to require H–L to provide CPVD security only in the event that H–L mortgages more than eighty percent of the project's fair market value. H–L also argues that the evidence it presented as to the circumstances surrounding the making of the agreement supports this interpretation.

Even after considering the circumstances surrounding the making of the PPA, we do not believe the language of § 5.3 can reasonably be construed in the manner that H–L suggests. Section 5.3 does not reference § 5.1 or § 5.2, nor is it referenced by those provisions. Instead, § 5.3 plainly requires H–L to maintain a policy of insurance, a bond, a guarantee, a letter of credit, or a self-financed fund in the amount of the CPVD "at all times during the term of [the PPA]." [4]

H–L's second argument is that CUC waived any right it had to security under § 5.3 by waiting until two years after H–L commenced production to provide H–L with a notice of default. Vermont law does not support this assertion. A waiver of contractual rights can be implied from conduct only when that conduct is unequivocal. *See West River Power Co. v. Bussino,* 111 Vt. 137, 139–40, 11 A.2d 263, 264 (1940). CUC's performance of the contract for a relatively short period of time before it served a notice of termination upon H–L was not an unequivocal waiver by CUC. *See Tooley v. Robinson Springs Corp.,* 163 Vt. 627, 628, 660 A.2d 293, 295 (1995) (holding that failure to declare a default "when there were other opportunities to do so" does not constitute a waiver). We therefore affirm the District Court's entry of summary judgment dismissing H–L's complaint.

## II.

H–L next contends that CUC was not entitled to summary judgment on its counter-

---

4. The parties assume that the PPA is governed by Article Two of Vermont's version of the U.C.C. We need not decide whether in fact the PPA constitutes a "transaction[] in goods" and therefore falls within the purview of Article Two, *see* Vt. Stat. Ann. tit. 9A, § 2–102 (1994), because the result we reach is the same whether or not Article Two applies. Article Two provides that evidence of course of dealing, usage of trade, and course of performance may be admitted to explain or supplement a contract's terms, even before the contract is found to be ambiguous.

*See id.* § 2–202 & cmt. 1(c). However, where a contract's express terms cannot reasonably be construed in a manner consistent with course of performance or usage of trade evidence, the express terms control. *See id.* § 2–208(2). Since the express terms of PPA § 5.3 cannot reasonably be interpreted in the manner that H–L suggests, Article Two does not require us to consider whether the evidence presented as to course of dealing, usage of trade, or course of performance supports H–L's position.

claim. CUC's counterclaim reads in pertinent part:

5. Under the terms of the PPA, H–L had many obligations to Defendant including, without limitation, the obligation to tender an earnest money deposit, to execute and deliver security agreements, and to acquire or create a mechanism to secure capital replacement and the CPVD.

6. H–L breached its contractual obligations to Defendant including, without limitation, by failing to create or fund a mechanism to secure capital replacement and the CPVD.

7. As a result of H–L's breaches of the PPA, Defendant terminated the contract.

8. H–L was required to pay to Defendant the CPVD within 30 days after the termination of the PPA. The CPVD due from H–L at the termination of the PPA exceeded $109,000. H–L has failed to make this payment.

WHEREFORE, Defendant moves this Court to:

. . . .

(d) enter judgment on behalf of Counterclaim Plaintiff and against Counterclaim Defendant in an amount to be proven at trial. . . .

CUC's Answer to the Amended Complaint and Counterclaim at 9. The counterclaim's allegation that "H–L was required to pay to Defendant the CPVD within 30 days after the termination of the PPA" restates PPA § 6.3(a), which provides that H–L "will pay [CUC the CPVD] within thirty (30) days after termination," and appears to seek liquidated damages pursuant to that provision. The counterclaim can also be read to seek recovery of CUC's actual damages, since it alleges that H–L breached the PPA.

Although the record is somewhat unclear, it appears that the District Court awarded CUC damages under a liquidated damages theory. In its opinion dismissing H–L's complaint, the District Court summarized the PPA and noted in dicta that "[i]n the event of default, the positive balance in the CPVD fund would be payable to [CUC]." In its motion for summary judgment on the counterclaim, CUC latched on to this statement—

which can only be understood as a reference to PPA § 6.3(a)—and argued:

In its Ruling [dismissing H–L's complaint], the Court determined that "[i]n the event of default, the positive balance in the CPVD fund would be payable to [CUC]." This, [CUC] submits, is a correct interpretation of the PPA, and constitutes the law of the case for the purposes of this motion. Accordingly, the only issue for determination in connection with the disposition of [CUC's] counterclaim is the amount of the CPVD.

CUC's Motion for Leave To File Motion for Summary Judgment with Incorporated Motion for Summary Judgment at 2 (internal citation omitted). In granting CUC summary judgment on the counterclaim, the District Court in turn cited its prior ruling, apparently accepting the liquidated damages theory.

Hence, it appears to us that CUC was granted recovery under a liquidated damages theory; we conclude, however, that CUC is not entitled to such recovery under the PPA. Subsection 6.3(a) must be read with the introductory clause of § 6.3; together, the two provide:

*Payment of Cumulative Present Value Difference.* Recognizing that the [fixed $0.08/kwh rate] is designed to facilitate the financing of the Project, and that the benefits of such a rate are likely to accrue to [CUC] ratepayers only in the later years of the Agreement, in the event of termination *of this Agreement by [H–L]* pursuant to Section 6.2:

(a) [H–L] will pay [CUC] within thirty (30) days after termination the Cumulative Present Value Difference ("CPVD").

Although § 6.3 requires H–L to pay CUC the CPVD within thirty days after termination in the event that *H–L* terminates the agreement, neither § 6.3 nor any other provision of the PPA requires H–L to pay CUC the CPVD in the event that *CUC* terminates in response to H–L's default.

■ Because there is no basis for an award of liquidated damages, any recovery on the counterclaim must be based on the actual damages that CUC sustained as a

 

result of H–L's breach.[5] Even CUC now appears to recognize this: On this appeal, CUC argues that the District Court's. award is justified by § 6.2(d) of the PPA, which provides that "[p]rior to termination, the obligations of the Parties to this Agreement shall continue in full force and effect for all purposes, including the right to collect damages for failure to perform." If it applies in this instance, § 6.2(d) merely protects CUC's common law right to collect its actual damages for H–L's failure to perform under the PPA. However, CUC made no showing of its actual damages in support of its summary judgment motion, despite the fact that it bears the burden of proving damages. *Cf. Ferris–Prabhu v. Dave & Son, Inc.,* 142 Vt. 479, 480–81, 457 A.2d 631, 632–33 (1983) (discussing plaintiff's failure to meet burden of proving damages in breach of contract action). Indeed, CUC never even alleged that it had suffered actual damages in the amount of the CPVD; instead, as previously noted, CUC appears to have relied solely upon a liquidated damages theory in moving for summary judgment.[6]

Given that there was no suggestion or finding that CUC suffered actual damages in the amount of the CPVD, it was not appropriate for the District Court to grant CUC summary judgment in the amount of $78,736.00. Accordingly, we reverse the District Court's ruling with respect to the counterclaim and remand for further proceedings. If CUC wishes to press its counterclaim, it must provide evidence that it suffered actual damages due to H–L's breach.

## CONCLUSION

The judgment of the District Court dismissing H–L's complaint is affirmed. The judgment of the District Court granting summary judgment to CUC on its counterclaim is reversed, and the case is remanded.

---

5. Because the District Court apparently made its award under a liquidated damages theory, it did not consider whether expectation, reliance, or restitution provides the appropriate measure of actual damages in this case, *see generally Bausch & Lomb Inc. v. Bressler,* 977 F.2d 720, 729–30 (2d Cir.1992) (discussing types of contract damages), or make a specific finding that the CPVD— calculated using 1992 predictions for market energy rates from 1993 through 1996—is the correct amount of CUC's actual damages under any of these measures.

6. In granting CUC summary judgment on the counterclaim, the District Court noted that H–L had "fail[ed] to dispute the defendant's computation of damages," and CUC now argues that H–L has waived any argument with respect to the quantum of damages awarded. By not objecting to the calculation of the CPVD in its opposition to CUC's motion, H–L certainly waived its right to dispute the calculation of any liquidated damages and relied, correctly as it turns out, on its argument that no liquidated damages at all were proper under the contract. H–L has not, however, waived its right to dispute the quantum of *actual* damages because CUC never made any allegations or offered any proof as to its actual damages in moving for summary judgment.