**J.A. McDONALD, INC., Plaintiff,**

v.

**WASTE SYSTEMS INTERNATIONAL MORETOWN LANDFILL, INC., and FRONTIER INSURANCE COMPA-NY, Defendants.**

No. 2:99–CV–172.

United States District Court,
D. Vermont.

Dec. 13, 2001.

Eric Gustaf Parker, Esq., Bauer, Anderson & Gravel, Burlington, W. John Amerling, Esq., Verrill & Dana, Portland, ME, for J.A. McDonald, Inc., a Vermont corporation with a place of business in Lyndon Center, in the County of Caledonia, State of Vermont, plaintiffs.

Samuel Hoar, Jr., Esq., Dinse, Knapp & McAndrew, P.C., Burlington, Mark A. Berthiaume, Goldstein & Manello, P.C., Boston, MA, for Waste Systems International Moretown Landfill, Inc., a Delaware corporation registered in the State of Vermont, Frontier Insurance Company, a New York corporation with a principal place of business in New York, defendants.

## OPINION AND ORDER

SESSIONS, District Judge.

This matter is before the Court on Plaintiff J.A. McDonald, Inc.'s ("McDonald" or "Contractor") motion for partial summary judgment in its claim of wrongful termination of contract against Defendant Waste Systems International Moretown Landfill, Inc. ("WSI–Moretown" or "Owner"). McDonald argues that as a matter of law WSI–Moretown wrongfully terminated the contract by failing to follow certain termination procedures allegedly required by the contract. For the reasons set forth below, McDonald's motion for partial summary judgment is **DENIED.**

## I. Background

### A. Facts

The following facts are construed, as they must be on a motion for summary judgment, in the light most favorable to the nonmoving party, WSI–Moretown.

McDonald is a construction company with its principle place of business in Caledonia County, Vermont. WSI–Moretown is a Delaware corporation that owns and operates a landfill in Moretown, Vermont. On July 23, 1998 McDonald entered into a contract ("the Contract")[1] with WSI–Moretown to construct a lined landfill cell in Moretown, Vermont. The project involved excavation to create the cell and the installation of underdrains and clay and synthetic liners. The Contract also required McDonald to construct certain other facilities at the site.

The landfill cell was to be WSI–Moretown's second one at the site, replacing the first cell, which was nearing capacity. As a result, it was important to WSI–Moretown that the project be completed quickly. The Contract specified that the work must be completed by January 1, 1999. In addition, it stated that the time of completion was an "essential condition" of the Contract. Agreement ¶ 4.

Lamoroux & Dickinson ("L & D" or "Engineer") was WSI–Moretown's engineer for the project. L & D's relationship with WSI–Moretown was the subject of a separate agreement (the "Administration Agreement") between the two. The Contract also outlined a number of responsibilities of L & D. Most important to the present dispute were the Engineer's responsibilities to decide "questions as to the acceptable fulfillment of this Agreement on the part of the Contractor," Agreement ¶ 6, and questions regarding the "quality and acceptability of ... [the] WORK performed." General Conditions ¶ 27.1.

1. The Contract itself consists of a number of parts, including an agreement ("Agreement") signed by the parties and general conditions ("General Conditions"). When citing a specific provision of the Contract, the Court will identify whether it is included in the Agreement or the General Conditions. The Court relies on the version of the Contract located in Exhibit B of Paper 38.

The Contract permitted the Contractor to avoid liquidated damages for work delayed by certain unforeseeable causes if written notice was provided to the Owner or Engineer. Agreement ¶ 5; General Conditions ¶ 15.4. Similar written notice to the Engineer or the Owner was required for other changes to the Contract terms. *See e.g.*, General Conditions ¶ 11.3 (changes caused by emergencies affecting safety of workers); General Conditions ¶ 17.1 (permitting equitable adjustment of Contract prices caused by unexpected subsurface conditions). In general, any change to the work or prices under the Contract was to be effected through a change order. *See e.g.*, General Conditions ¶ 8.1 (Contractor's substitution of materials, articles, or equipment); General Conditions ¶ 14.0 (changes in the contract price, generally).

Unfortunately, McDonald did not complete the cell by the January 1, 1999 deadline. The cause of the delay is disputed by the parties,[2] but is not at issue in this motion.

On November 3, 1998 McDonald sent WSI–Moretown a letter indicating that it would be delayed in completing the work and that it faced additional costs as a result. (Paper 31, Ex. F). The letter stated that "it is J.A. McDonald's position that due to adverse weather conditions . . . the costs associated with [certain measures taken as a result of these conditions] will be processed as a Change Order to the Contract" which "will increase both the contract amount due and the time required for performance of the work." *Id.* McDonald sent a second letter on November 17, 1998 providing "formal notice according to the terms of the contract" that the work

would be delayed and asking for additional time to complete the project. (Paper 31, Ex. G). However, no change order was granted and, as winter conditions set in, work on the project was halted.

On January 6, 1999, at WSI–Moretown's request, L & D provided it with a memorandum listing the incomplete work at the project site as of January 1, 1999. (Paper 31, Ex. L). This list included McDonald's failure to complete ten of the thirteen acres of the lined cell, as well as various other facilities. WSI–Moretown did not ask L & D to evaluate whether good cause existed for the delay. Thus, the memorandum did not provide reasons for the incomplete work nor did it conclude that grounds for termination of the contract did or did not exist.

On January 11, 1999, WSI–Moretown's parent corporation, Waste System's International, Inc., issued a "notice of default" to McDonald. The notice stated that the default was "[b]y reason of Contractor's failure to comply with the terms of the Agreement, as more particularly described in the attached Memorandum Dated January 6, 1999 from [L & D], Contractor has breached its obligations under the [Contract] and accordingly, Contractor is hereby given this NOTICE OF DEFAULT." (Paper 31, Ex. M). In a January 15, 1999 letter to Waste Systems International, McDonald contended that it was not in default under the Contract, that "a more detailed explanation" of the reasons for the alleged default was necessary, and that liquidated damages were to be paid only "as determined by the engineer." (Paper 31, Ex. N).

At a January 28, 1999 meeting and a subsequent February 1999 meeting, the

---

**2.** McDonald contends that work was delayed by unforeseeable weather and site conditions and by changes made to the project by WSI–Moretown after the work commenced. WSI–

Moretown contends that the delay resulted from McDonald's decision to purchase a less expensive clay, which failed to dry sufficiently in time to meet specifications.

parties failed to resolve their differences. The L & D engineer's notes from the January meeting state that she told the parties: "L & D does not want to intrude in the dispute. L & D are [sic] available to render non-binding opinion to assist in resolving the dispute." (Paper 31, Ex. O).

In late February, WSI–Moretown hired L & D's subconsultant, Golder Associates, as the engineer for the project and continued to retain L & D for certain limited services related to the project. On March 23, 1999 Waste Systems International issued a "notice of termination" to McDonald. This letter invoked paragraph 16, see Part B *infra*, of the Agreement for the termination and referenced the January 11, 1999 "notice of default" letter for explanation of the grounds for termination. (Paper 31, Ex. S). Shortly thereafter WSI–Moretown retained a new contractor to complete the project.

On May 28, 1999 McDonald filed the instant action against WSI–Moretown and Frontier Insurance Co. ("Frontier")[3] in Washington County Superior Court. *J.A. McDonald, Inc. v. Waste Systems Int'l Moretown Landfill, Inc.*, No. 288–5–99 (Vt. Sup.Ct. May 28, 1999)(Paper 3). WSI–Moretown and Frontier removed the case to federal court on June 28, 1999.

## B. Contract Provisions

A number of provisions of the Contract are relevant to the dispute between the parties. These provisions deal with the importance of timely completion of the work, the procedures for termination of the project, and the role of the Engineer in evaluating McDonald's performance.

Several provisions indicate that timely completion of the project was a key aspect of the Contract. Paragraph 4 of the Agreement states that "[t]he time of completion of the WORK [is an] essential condition[ ] of the CONTRACT." General Condition 15 also provides that the time of completion is an essential condition. General Conditions ¶ 15.1 ("The date of beginning and the time for completion of the WORK are essential conditions of the CONTRACT DOCUMENTS ...."); General Conditions ¶ 15.2 ("All work must be completed by the January 1, 1999 CONTRACT TIME ...."). This section also provides that:

> The CONTRACTOR will proceed with the WORK at such rate of progress to insure full completion within the CONTRACT TIME. It is expressly understood and agreed, ..., that the CONTRACT TIME for the completion of the WORK described herein is a reasonable time, taking into consideration the average climatic and economic conditions and other factors prevailing in the locality of the WORK.

General Conditions ¶ 15.2.

Provisions imposing liquidated damages for delay also underscore the importance of timely completion of the work. Paragraph 5,[4] provides that:

> The sum of one thousand dollars ($1,000) is agreed upon as liquidated damages and will be paid by the Contractor to the Owner as determined by the Engineer for each and every calendar day in which any work of the Contract is un-

---

**3.** Frontier underwrote WSI–Moretown's payment obligations to McDonald under the Contract. McDonald seeks to force Frontier to pay this bond and also alleges that both Frontier and WSI–Moretown are in violation of Vermont's "Prompt Payment Law," Vt. Stat. Ann. tit. 9, §§ 4001–09.

**4.** Neither version of the Contract submitted by the parties includes a numeral for this provision. However, both parties identify this provision as "paragraph 5" or "section 5," and the Court will follow this practice.

completed which prevents the proper completion of the landfill project after time stipulated for such completion. If the contract time is extended due to the negligence of the Contractor, the Contractor shall be held responsible for all associated engineering costs, ..., incurred as a result of the extension.

Agreement ¶ 5. General Condition 15 provides further information on liquidated damages. Specifically, "[t]he CONTRACTOR shall not be charged with liquidated damages or any excess cost when the delay in completion of the WORK is due to [certain unforeseeable causes],[5] and the CONTRACTOR has promptly given WRITTEN NOTICE of such delay to the OWNER or ENGINEER." General Conditions ¶ 15.4.

Two provisions deal with the termination of the Contract. Paragraph 16 provides that:

16. If the Contractor defaults or neglects to carry out the work in accordance with this Agreement, the Owner may, after forty-eight (48) hours written notice to the Contractor and without prejudice to any other remedy it may have, make good such deficiencies.

The cost thereof shall be deducted from the payment then or thereafter due the Contractor or, at its option, the Owner may terminate this Agreement and take possession of the site and all materials, equipment, tools, construction equipment, and machinery thereupon owned by the Contractor and may finish the work by whatever method it may deem expedient.[6]

Agreement ¶ 16. While it was not invoked by WSI–Moretown during the dispute, General Condition 18 similarly gives the Owner the authority to terminate the Contract for certain causes with ten days written notice to the Contractor and his surety. General Conditions ¶ 18.2. Neither of these provisions provides a decisional role for the Engineer in terminating the Contractor.

Other provisions, however, spell out the Engineer's role more generally. Paragraph 6 of the Agreement states that:

All work shall be done under the general supervision of the Owner. The Owner's Engineer shall decide any and all questions which may arise as to the quality and acceptability of materials furnished, work performed, rate of progress of work, interpretation of Drawings and Specifications, and all questions as to the acceptable fulfillment of this Agreement on the part of the Contractor.

Agreement ¶ 6. General Condition 27, entitled "ENGINEER'S AUTHORITY," further provides that:

The ENGINEER shall act as the OWNER'S representative during the construction period. He shall decide questions which may arise as to quality and acceptability of materials furnished and WORK performed. He shall interpret the intent of the CONTRACT DOCUMENTS in a fair and unbiased manner. The ENGINEER will make visits to the site and determine if the WORK is pro-

---

5. These include, "unforeseeable causes beyond the control and without the fault or negligence of the CONTRACTOR, including, but not restricted to, ..., acts of the Owner, ..., and abnormal and unforeseeable weather ...." *Id.* at 15.4.2.

6. This section further provides that:

The Contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of this Agreement exceeds the costs of finishing the work, such excess shall be paid to the Contractor. However, if such expense exceeds the unpaid balance, the Contractor shall pay the difference to the Owner. Agreement ¶ 16.

ceeding in accordance with the CONTRACT DOCUMENTS.

General Conditions ¶ 27.1. In addition, the Engineer's certification that the work is complete and acceptable under the conditions of the Contract must accompany the Contractor's final payment request to the Owner. General Conditions ¶ 19.5.

The Contract itself does not specifically define what is meant by "acceptable fulfillment of the Agreement." The scope of the Engineer's authority in this regard is the key dispute between the parties. At issue is whether this provision requires the Owner to consult the Engineer regarding the cause of the Contractor's incomplete work prior to terminating the Contract.

## II. Applicable Law

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue as to a material fact exists when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the initial burden of coming forward with those parts of the record it feels demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When evaluating a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The court may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party. *Id.* at 247–52, 106 S.Ct. 2505.

### B. Principles of Contract Interpretation

Because federal jurisdiction over this case is based upon the diversity of the parties, pursuant to 28 U.S.C. § 1332(a)(1), the Court must follow the contract construction rules of Vermont in interpreting the Contract. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Vermont law, the construction of an unambiguous contract is a matter of law to be resolved by the Court. *Ianelli v. Standish*, 156 Vt. 386, 389, 592 A.2d 901, 903 (1991). The language of an unambiguous contract term "must be given effect in accordance with its plain, ordinary and popular sense." *Isbrandtsen v. N. Branch Corp.*, 150 Vt. 575, 579, 556 A.2d 81, 85 (1988). In interpreting a contract, Vermont courts "consider all parts so they 'form a harmonious whole.'" *Morrisseau v. Fayette*, 164 Vt. 358, 366–67, 670 A.2d 820, 826–27 (1995) (quoting *Hill v. City of Burlington*, 157 Vt. 241, 247, 597 A.2d 792, 795–96 (1991)).

A contract term "is ambiguous only to the extent that reasonable people could differ as to its interpretation." *Isbrandtsen*, 150 Vt. at 577, 556 A.2d at 83. Whether a contract is ambiguous or unambiguous is a question of law for the court to decide. *Id.* However, if a contract term is ambiguous, the intent of the parties becomes a question of fact to be resolved by the trier of fact. *United Ry. Supply & Serv., Ltd. v. Boston & Maine Corp.*, 148 Vt. 454, 457, 535 A.2d 325, 327 (1987). Thus, at the summary judgment stage, the movant has the burden of demonstrating that there

are no factual disputes as to the parties' intent regarding material parts of the contract. *GTM, Inc. v. Transcon. Ins. Co.*, 5 F.Supp.2d 219, 223 (D.Vt.1998)(summary judgment is precluded when ambiguity in contract terms leaves the parties' intent in doubt).

## III. Discussion

McDonald offers three separate bases for its claim that WSI–Moretown's termination of the Contract was improper under the conditions of the Contract. First, McDonald contends that WSI–Moretown failed to consult L & D properly in determining that grounds for termination under paragraph 16 existed. Second, McDonald argues that the Contract provided for liquidated damages, not termination, as the sole remedy for delayed work. Third, McDonald argues that the notices of default and termination were defective because they were signed and sent by Waste Systems International, Inc., which was not party to the Contract, and because they failed to explain adequately the grounds for the termination. For the reasons discussed below, the Court must deny McDonald's motion for summary judgment on the issue of wrongful termination under each of these bases.

## B. Failure to Consult L & D Regarding Excusable Delay

Paragraph 16 does not on its face state that the Engineer must be consulted prior to termination. Indeed the provision makes no mention of the Engineer at all and gives the Owner the power to terminate the Contract "at its option." Agreement ¶ 16. Other provisions of the Contract regarding termination and time extensions also make no mention of Engineer consultation. *See* General Conditions ¶ 18.2 (additional termination provision making no mention of the Engineer); General Conditions ¶¶ 17.1, 17.2 (permitting time extensions when a written change order is granted by the Owner and making no mention of the Engineer).

Paragraph 16 does, however, require that the Contractor has "default[ed]" or not "carr[ied] out the work in accordance with the Agreement" as a precondition of termination and other provisions of the Contract designate L & D as a neutral decision-maker for disputes involving McDonald's performance under the Contract. In particular, paragraph 6 of the Agreement grants the Engineer the power to "decide" questions regarding, *inter alia,* the Contractor's "acceptable fulfillment of the Agreement." General Condition 27 also requires the Engineer to "decide" questions regarding the "quality and acceptability of the materials furnished and Work performed" and to "interpret the intent of the CONTRACT DOCUMENTS in a fair and unbiased manner." General Conditions ¶ 27.1.

In addition to these provisions, paragraph 5 of the Agreement permits liquidated damages to be imposed "as determined by the Engineer" for every calendar day in which the project is uncompleted due to the delay. General Condition 15 also requires the Contractor to inform either the Owner or Engineer in writing when the work will not be completed on time due to unforeseeable causes. General Conditions ¶ 15.4 These provisions suggest that the Engineer is to play a role in evaluating the cause of delay, at least for liquidated damages purposes.

Alternatively, however, paragraph 6 of the Agreement and General Condition 27 can be interpreted more narrowly. "[A]cceptable fulfillment of the Agreement" and "quality and acceptability of the Work" can also be reasonably construed as giving the Engineer the limited role of determining whether the work is in compliance with the technical specifications of the Contract.

This responsibility could be met, for example, by an Engineer determination that ten of the thirteen acres of the cell had not been completed to Contract specifications on January 1, 1999. Permitting the Owner to terminate the Contract without consultation with Engineer regarding the cause of the delay is consistent with the parties' inclusion of time of completion as an essential and unambiguous term of the Contract.

In sum, viewing the Contract as a whole, there are two reasonable interpretations of the procedural role of the Engineer in terminations for delay under paragraph 16. Paragraph 16 is thus ambiguous in this regard. Because reasonable people could disagree on the intent of the parties, McDonald has not shown an absence of disputed material facts and its motion for summary judgment on this issue must be denied.

## C. Liquidated Damages as the Sole Remedy for Delay in Project Completion

■ McDonald also argues that WSI–Moretown could not terminate the Contract based solely on a delay in the completion of the work. Instead, McDonald argues that Contract's liquidated damages provisions, Agreement ¶ 5, General Conditions ¶¶ 15.3, 15.4., were intended by the parties to serve as WSI–Moretown's sole remedy for delay. There is no dispute that the basis for the termination was McDonald's failure to complete the work by the January 1, 1999 deadline. However, the Court finds that delayed work is unambiguously included by the plain language of paragraph 16 as a grounds for termination.

Paragraph 16 permits the Owner to terminate the Contract "[i]f the Contractor defaults or neglects to carry out the work in accordance with this Agreement ...." Agreement ¶ 16. Time of completion was an express and essential term of the Con-

tract. Agreement ¶ 5; General Conditions ¶¶ 15.1, 15.2. Thus, completing the work on time is within the plain meaning of "carry[ing] out the work in accordance with" the Contract. McDonald provides no basis for a reasonable person to conclude, as it argues, that paragraph 16's application is limited to "specific item[s] of defective work," contrary to the clear language of the provision. Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. at 19 (hereinafter "Pl.'s Mem.") (Paper 31) Because the language of paragraph 16 unambiguously includes delayed work as a basis for termination, McDonald's motion for summary judgment must be denied.

## D. Defects in the Notices of Termination and Default

■ The two provisions in the Contract pertaining to termination, paragraph 16 of the Agreement and paragraph 18.2 of the General Conditions, both provide that the "Owner" may terminate the contract. These provisions do not grant any other entity the power to terminate the Contract. Noting that the Contract identifies "WSI Moretown Landfill, Inc." as the "Owner," Agreement at 1, McDonald argues that only WSI–Moretown, not Waste Systems International, Inc., WSI–Moretown's parent company, could terminate the contract.

Waste Systems International, Inc., through its vice president and general counsel, Arthur L. Streeter ("Streeter"), and not WSI–Moretown, issued both the notice of default and the notice of termination. (Paper 31, Ex. M, S). On both these notices, Waste Systems International, Inc. was listed on the signature line. McDonald argues that "[f]or this reason alone, the Court should determine that the termination was wrongful." Pl.'s Mem. at 14 (Paper 31). This technicality, however, is not a sufficient basis for breach of contract based on wrongful termination.

Failure to provide notice of termination in compliance with contract terms may be grounds for breach of contract. *Karlen Communications, Inc. v. Mt. Mansfield Television, Inc.*, 139 Vt. 615, 617, 433 A.2d 290, 292 (1981) (terminating party breached contract by failing to provide contractually-required ten day opportunity to cure default); *see also Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 727 (2d Cir.1992) (terminating party breached contract by providing two-day written notice of termination instead of contractually-required thirty day written notice); *Filmline (Cross–Country) Prods., Inc. v. United Artists Corp.*, 865 F.2d 513, 518 (2d Cir. 1989). However, the Contract does not require any particular form of notice of default or termination. To the contrary, McDonald's own prior behavior suggests that it understood both WSI–Moretown and Waste Systems International, Inc. to have authority with regard to the Contract. The November 17, 1998 letter in which McDonald requested additional time and cost reimbursement due to unforeseeable weather conditions was addressed to Waste Systems International, Inc. (Paper 31, Ex. G). McDonald itself characterizes this letter as "formal notice according to the terms of the Contract." *Id.*

In addition, WSI–Moretown's error did not provide McDonald with inadequate notice. McDonald clearly understood that it was being notified of its default under the Contract and, subsequently, of the termination of the Contract. Both notices referenced the Contract in the "Re:" subject line as the "Agreement dated July 23, 1998 ('Agreement') By and Between WSI Moretown Landfill, Inc. ('WSI') and J.A. McDonald, Inc. ('Contractor')." Indeed, McDonald protested the existence of a default in a January 15, 1999 letter to Streeter and Waste Systems International, Inc. (Paper 31, Ex. N) and met with representatives of WSI–Moretown to address the

dispute on two separate occasions after the notice of default was sent.

It is thus apparent from McDonald's response to the notices and the parties' course of dealing prior to the alleged default, that the parties understood that Waste System's International, Inc. could, under the Contract, speak for its subsidiary, WSI–Moretown. *See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 31 (2d Cir.1997) (looking to parties' prior course of dealings to determine whether common understanding existed between the parties with regard to certain referenced contract conditions) (citing Restatement (Second) of Contracts § 223 (1979)). In light of this behavior, McDonald cannot in good faith contend that it reasonably understood the Contract as permitting WSI–Moretown alone to issue the notices. As a result, the Court cannot conclude that this defect rises to the level of "wrongful termination" constituting a breach of the Contract.

■ McDonald also challenges the notice of termination as failing to provide an adequate explanation of the grounds for the termination. The notice of termination in this case cited paragraph 16 as the provision authorizing the termination. It did not cite a particular provision of the Contract under which McDonald was alleged to be in default. Instead, the notice of termination cited L & D's memorandum listing the incomplete work as the basis for the default and the termination. This memorandum was attached to the notice of default.

The Court cannot conclude that a reasonable person would fail to understand, based on this explanation of the default, that the failure to complete the work by the Contract deadline was the basis for the termination. *See* Mark J. Heley & Mark A. Bloomquist, *The Design Professional's*

*Role in Termination of the Contractor*, 17 Construction Law. 3, 9 (1997) (citing *Blaine Econ. Dev. Auth. v. Royal Elec. Co., Inc.*, 520 N.W.2d 473, 476 (Minn.Ct. App.1994)). Accordingly, both McDonald's requests for partial summary judgment based on defective notice of termination are denied.

## IV.  Conclusion

Wherefore, the Court rules as follows:

Plaintiff McDonald's motion for partial summary judgment is **DENIED**.