Rose v. City of Burlington, No. S1480-03 CnC (Norton, J., Aug. 31, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                    SUPERIOR COURT
Chittenden County, ss.:                              Docket No. S1480-03 CnC


ROSE

v.

CITY OF BURLINGTON


ENTRY

This case is about ambiguity in contract language and whether it arises in terms that reference federal regulations. The City of Burlington, one party to a purchase and sale agreement, has moved for summary judgment on Plaintiff Sellers' cause of action for breach of contract. The City argues there is no ambiguity as the clear language of the agreement dictates the terms and intentions of the parties. Sellers disagree and point to three clauses that they argue cannot be resolved without extrinsic evidence. With such evidence, Sellers argue, a breach of contract becomes clear. By

mutual stipulation, Sellers have agreed to dismiss their other claim of misrepresentation.

Sellers owned a parcel of land in South Burlington near the Burlington International Airport, which is owned and operated by the City of Burlington. In 1998, the City approached Sellers about purchasing their property for the airport's expanding needs. Sellers, at first reluctant, realized that through a negotiated sale they could obtain more beneficial terms than through an eminent domain process. Sellers entered into negotiations with the City, and in 2001, the parties signed a purchase and sale agreement. The property was transferred soon thereafter, and Sellers were paid 1.5 million dollars in return.

Sellers' breach of contract claim stems from provisions in the agreement that addressed Sellers' tax concerns and other expenses. As part of their negotiations, Sellers stated their desire to re-invest the money in another property to avoid the tax penalties from such a large sale. Under § 1031 of the Internal Revenue Code, Sellers' proceeds would not be taxed if they purchased a similar property within a year of the sale, thereby "exchanging property" tax-free. As part of the agreement, the City agreed to bear expenses that Sellers foresaw in this search and eventual purchase. Sellers claim that this was memorialized in the contract and the City has failed to fully perform. City argues that it has paid Sellers all of the money that it was obliged to reimburse under the contract as federal regulations limited the amount. At the heart of this dispute are three sections from the parties' agreement.

## Section 4

Section 4. <u>Purchase Price/Application/Deposit</u>. Buyer agrees to purchase the said Premises and pay to the Seller the sum of One Million Four Hundred and Eighty One Thousand and 00/100 Dollars ($1,481,000.00), (the "Purchase Price"), to be paid by check drawn from the City of Burlington funds at the time of delivery of the deed. . . .

In addition thereto, Buyer agrees to pay and/or reimburse Seller at closing for all reasonable costs and expenses incurred by Seller in the sale of the Premises to Buyer, including, but not limited to, reasonable attorney's fees for preparation and negotiation of this Agreement, preparation of Warranty Deed and Vermont Property Transfer Tax Return, and other closing documents, and attendance at closing, and accounting fees for accounting advice related to Seller's sale of the Premises, the intention of the parties being that Buyer shall reimburse Seller for all reasonable professional fees and expenses incurred by Seller relative to sale of the Premises that are considered eligible under the Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970 (49 C.F.R. Part 24), as amended.

This first section that Sellers cite begins with a recital of the purchase price, goes on to explain the deposit amount, and established the parties' escrow arrangement; it then shifts to the issue of expenses. This paragraph, quoted above in full, starts with a laundry list of what can be dubbed "closing costs" that the City as Buyer "agrees to pay and/or reimburse Seller." The phrase "including, but not limited to," at the beginning of the list suggests that the items that follow are the minimum expenses for which the City is obligated. The problem, according to Sellers, comes at the end of the list with a statement that it is their intent that the Sellers be reimbursed expenses to the extent allowed by 49 C.F.R., part 24. This section of the Code of Federal Regulations governs the amounts that federal or state agencies can reimburse Sellers for property acquired for Federal or federal-assisted projects. In particular, it contains a

section that requires the owner to be reimbursed for "recording fees, transfer taxes, documentary stamps, evidence of title, boundary surveys, legal descriptions of the real property, and similar expenses incidental to conveying." Expenses Incidental to Transfer of Title to the Agency, 49 C.F.R. § 24.106 (1989).

Seller's argument is that § 24.106 does not include all of the expenses that the parties listed out in their agreement and that the two sections must be read in opposition. This is not necessarily true. The court favors a fair and reasonable construction of a contract over one that does not. Trustees of Net Realty Holding Trust v. AVCO Fin. Serv. of Barre, Inc., 147 Vt. 472, 476 (1986); see also Morrisseau v. Fayette, 164 Vt. 358, 366–67 (1995). Here the parties are clear that their intent is for the City to pay and/or reimburse Seller for "all reasonable professional fees and expenses incurred by Seller relative to sale of the Premises that are considered eligible" under the federal regulations. The laundry list includes some of these expenses and § 24.106 does not contradict or exclude them. In fact, they easily fit into the category of allowable "similar expenses."

The real issue is that the federal regulations create a ceiling on "eligible" expenses. Sellers would like to argue that they were unaware that the inclusion of the federal regulation language would mean a limit to what they would receive for closing costs, but the plain language of the agreement makes clear that the federal regulation would govern, which expenses would be "eligible" and thereby establish the amount Sellers would receive. Murphy v. Stowe Club Highlands, 171 Vt. 144, 152–53 (2001); see also Quenneville v. Buttolph, 2003 VT 82, ¶ 15 (unspoken intentions are not relevant to contract interpretation).

While Sellers' proffered interpretation of this section is possible, it is neither reasonable nor preferable.  Sellers were reimbursed for their closing costs, albeit only to the extent that the expenses were eligible under § 24.106.  But they were not categorically denied closing costs, and their brief does not cite a particular closing cost from their laundry list that was denied outright by the City or the FAA.  Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972) ("A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried."); Travellers Ins. Co. v. Demarle, Inc. USA, 2005 VT 53, ¶ 9 (mem.).  Without proof of any breach of this particular section's plain language, Sellers' argument about the monetary limits is not supported by the terms of the contract.  Therefore, the City is entitled to summary judgment on the question of breach for Section 4.

## Section 6

Section 6 Tax Free Exchange.  The Seller anticipates exchanging the property at 3060 Williston Road for other property of a like kind within the meaning of Section 1031 of the Internal Revenue Code.  The Buyer hereby acknowledges that it is the intent of the Seller to effect an IRC Section 1031 tax deferred exchange which will not delay the Closing. . .

The Buyer agrees to reimburse the Seller for necessary and reasonable business expenses associated with acquiring the exchange property.  These costs would include origination/loan application fees, purchase and acquisition fees, including reasonable consulting fees in connection with the tax free exchange, reasonable attorney's fees, property transfer tax fees, title search fees, title insurance costs, mortgage preparation fees,

and other reasonable closing costs, appraisal fees, credit check fees, agent fees related to the exchange process, and certain miscellaneous costs, including but not limited to reasonable travel expenses to locate an exchange property, the intent being that Sellers will be reimbursed consistent with the Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970 (49 C.F.R. Part 24), as amended.

This next section that Sellers cite for their breach of contract claim deals directly with the Sellers' desire to nullify the tax consequences of this transaction. The section begins with a recitation of this aim, citing to the specific section of the IRC that covers property exchanges. As in Section 4, this section then lists several reasonable business expenses that the City agrees to reimburse. It also ends in a similar manner to Section 4 with the clause that the parties intend Sellers to be reimbursed consistent with 49 C.F.R., part 24.

Notwithstanding this superficial similarity, the two sections have striking and critical differences. Section 6 has the limited purpose of obligating the City to pay for certain expenses that the Sellers expect to incur subsequent to the immediate land purchase. This intent is made clear from the beginning of the section. At the time of the agreement, the City was well aware that Sellers were seeking a comparable property to purchase immediately and that any purchase agreement would have to include provisions to reimburse them for these expenses. While this project went beyond the immediate purpose of the agreement—to transfer Sellers' land to the City—it was a critical part of the agreement in the eyes of the Sellers, and the City agreed to pay their reasonable expenses.

As with Section 4, the City tried to limit its obligation by inserting

language that the terms of this obligation would be governed by 49 C.F.R., part 24. The problem is that these federal regulations do not explicitly deal with such an individualized requirement. To the extent that they do, they disallow such expenses. Ineligible Moving and Related Expenses, 49 C.F.R. § 24.305(i) (1989) ("A displaced person is not entitled to payment for: . . . Expenses for searching for a replacement dwelling . . . ."). But even this provision may not apply to Sellers as it is unclear from the parties' briefs whether or not Sellers qualify as "displaced persons" for the purpose of reimbursement under § 24.304 or § 24.401. Definitions, 49 C.F.R. 21 24.2 (1989). If Sellers do not qualify as such, then even the language of § 24.305 does not apple leaving the parties in a regulatory void. It would be highly improbable that this was the parties intent, to create an explicit benefit at the beginning of a sentence only to immediately revoke it in the next clause.

By arguing for a plain reading, the City is trying to force these regulations to do something that they were simply not created to do. These regulation were promulgated to create a fair, consistent, and equal policy for federal agencies that purchase private property for federal projects. Uniform Relocation Assistance and Real Property Acquisition Policy Act of 1970, Pub. L. No. 91-64, 1970 U.S.C.C.A.N. (84 Stat. 1894) 2222; see also id. at 5850 (legislative history); Purpose, 49 C.F.R. § 24.1 (1989). The resulting statute and regulations act as minimum requirements and do not necessarily deal with sophisticated land purchase transactions that parties may independently bargain for in their dealings. The City's insistence on reading these regulations into Section 6 without further evidence is merely pounding at a square peg over a round hole.

The provisions of 49 C.F.R., part 24 and the agreement's

individually listed expenses collide. There are more than one reasonable interpretations that are equally valid. Sellers would argue that the individual elements should control and the federal regulations should be applied only to the extent that they agree with these terms, if at all. The City argues the opposite, that the regulations should control and the individual elements pushed aside. Neither interpretation is satisfactory as a matter of law, and the circumstances of the contract do not offer any greater clarification. The problem boils down to the insertion of federal regulations after one party had drafted the language concerning the individual expenses. The addition created a conflict, and the terms cancel each other out. Since both are included in the final signed agreement, the parties' intent is ambiguous and must be decided as a matter of law. Trustees of Net Realty Holding Trust v. AVCO Fin. Serv. of Barre, Inc., 144 Vt. 243, 248 (1984). Summary judgment on Sellers' claim of breach relating to the terms of Section 6 of the agreement would be improper at this time.

> Section 10. Relocation Assistance Benefits. The Seller acknowledges that in addition to the Purchase Price, Seller and tenants may be eligible to receive from the Buyer residential and non-residential Relocation Assistance Benefits in accordance with the Federal Register, part II, United States Department of Transportation, 49 C.F.R. Part 24, Uniform Relocation Assistance and Real Property Acquisition Regulations for Federally Assisted Programs, dated March 2, 1989, and as said rules and regulations may be amended prior to the Closing Date.

The final section that Sellers cite in their breach of contract claim is Section 10. This section deals with the relocation assistance benefits that 49 C.F.R., part 24 offers to Sellers who are displaced as a result of a move. This term of the contract does not promise anything beyond the application

of this section, which must apply anyway as this purchase was part of a federally funded project through the FAA. Sellers do not cite to any individual benefit in part 24 that they claim was not appropriately applied to their benefit in this case.

Instead, Sellers argue that Section 10 is further proof that the citations of the federal regulations in Sections 4 and 6 are redundant. This is not necessarily true. There are several benefits within part 24 that are not covered in either Section 4 or 6. See, e.g., <u>Payment for Actual Reasonable Moving and Related Expenses—Non-residential Moves</u>, 49 C.F.R. § 24.303 (1989). The inclusion of a general term promising the benefits of part 24 is, therefore, not redundant or proof that the inclusion of such language in Section 4 and 6 was. The only reasonable interpretation is that the inclusion in each section was intended to create overlapping provisions and provide clear proof of the parties' intent to incorporate the provisions of 49 C.F.R., part 24 in their final agreement. As such, Section 10 cannot, as a matter of law, be a source of the breach that Sellers allege. Its meaning and purpose are clear by the plain language of the Section.

Based on the foregoing, the City's motion for summary judgment is Denied in so far as it concerns Seller's claim of breach under Section 6 of the parties' agreement and is Granted for Seller's claims under Sections 4 and 10 of their agreement.

Dated at Burlington, Vermont_____, 2005.

_____

Richard W. Norton, Judge